# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1514

_____

United States of America,       *
                                      *
          Appellee,        *
                                      *   Appeal from the United States
      v.                     *   District Court for the
                                      *   District of Minnesota.
Marcus Ian St. James,       *
                                      *
         Appellant.       *

_____

Submitted: December 13, 2004
Filed: August 2, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

In a superceding indictment, the government charged Marcus Ian St. James (St. James) with one count of conspiring to distribute methamphetamine and ecstasy and with one count of aiding and abetting in the possession with intent to distribute ecstasy. A jury convicted St. James of conspiracy to distribute ecstasy, but not methamphetamine, and of aiding and abetting possession of ecstasy with intent to distribute. The district court[1] sentenced St. James to 38 months' imprisonment on

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Counts I and II, to be served concurrently. St. James appeals the denial of his motion for new trial, and the district court's application of two sentencing enhancements, one for obstruction of justice and a second for reckless endangerment during flight. We affirm.

## I.  BACKGROUND

In March 2001, United States Customs agents intercepted a package mailed from Toronto, Ontario, to Chevelle Williams at 3422 Grand Avenue South in Minneapolis, Minnesota. The package contained ecstasy. The Customs agent performed a controlled delivery and St. James signed for the package. After receiving the package, St. James left the residence, package in hand, and was arrested by Bloomington, Minnesota, police officers. The police officers then searched the house and interviewed St. James, who admitted receiving other packages of ecstasy and methamphetamine, including one mailed recently from Arizona. During the house search, officers found Northwest Airlines ticket stubs in St. James's name, but addressed to Timothy John Ehrmann (Ehrmann). The ticket summary and stubs revealed St. James traveled to Toronto on March 24, 2001, and returned to Minneapolis on March 26.

Following his interview, St. James agreed to cooperate with law enforcement and called Jason Thomas Haslip (Haslip) to collect the package. Haslip arrived at St. James's residence and told St. James he had been waiting for the pills. Haslip took the package and proceeded to 4302 Portland Avenue, a residence owned by Ehrmann. Agents proceeded to search Ehrmann's residence, where they seized documents showing three wire transfers, in the amounts of $8000, $4500, and $1700. The first two wire transfers from Ehrmann to St. James occurred on March 26 and 27, 2001, and the third wire transfer from Ehrmann to Ron Geoff occurred on March 20, 2001. Agents also seized a notepad documenting drug orders.

St. James was indicted on one count of conspiring to distribute in excess of 500 grams of methamphetamine and ecstasy, and a second count of aiding and abetting possession with intent to distribute 87 capsules and 1419 tablets of ecstasy, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) & (C), and 18 U.S.C. § 2. Following his arrest and arraignment, St. James was released on an unsecured bond. Trial commenced on July 22, 2003, against St. James and four co-defendants. On July 31, St. James failed to appear at trial, and the authorities delivered a thirteen-page suicide note to defense counsel advising where St. James's car could be found. The district court continued the trial until August 5.

During the morning hours of August 5, Oklahoma Public Safety troopers arrested St. James following a car chase. A trooper observed St. James's vehicle swerving, straddling lanes, and slowing abruptly to ten miles per hour. Upon activating his cruiser lights, the trooper observed St. James's vehicle first accelerate and then brake erratically. St. James then pulled his vehicle over, but he did not exit his vehicle. When a backup cruiser arrived, St. James drove away at high speed, driving erratically along streets and through parking lots in early morning, congested traffic. Troopers pursued St. James and conducted a tactical maneuver on St. James's vehicle, which caused his vehicle to roll over and stop. When troopers approached St. James, he told the troopers he was not armed, but he had taken 124 pills and was "in the middle of a suicide." St. James then appeared to lose consciousness and was taken to a hospital.

That same day, back in the Minneapolis federal courtroom, the government revealed in open court that, after fleeing Minnesota, St. James had contacted friends and informed them he intended to surrender. St. James's defense counsel also disclosed in court that St. James had left messages indicating his intent to surrender. St. James was returned to the courtroom on August 12, in time for the jury verdicts. The jury found St. James guilty of conspiring to distribute ecstasy, but not methamphetamine, and with aiding and abetting the possession of ecstasy with intent

to distribute. On August 19, St. James filed a motion for acquittal and a motion for new trial based on his absence during part of the trial. The district court denied the motions, finding St. James had absented himself voluntarily from trial. In February 2004, the district court sentenced St. James to 38 months' imprisonment. In determining St. James's sentence, the district court applied two enhancements for obstruction of justice and reckless endangerment during flight. St. James contends the district court erred in denying his motion for new trial and in applying the sentencing enhancements.

## II. DISCUSSION

### A. Motion for New Trial

We review the denial of a motion for a new trial for abuse of discretion. United States v. Lee, 274 F.3d 485, 493 (8th Cir. 2001). As a general rule, "[t]he further progress of the trial . . . will not be prevented and the defendant will be considered to have waived the right to be present whenever a defendant, initially present at trial, . . . is voluntarily absent after the trial has commenced." Fed. R. Crim. P. 43(b)(1). In deciding whether to try a defendant *in absentia*, the district court must make factual findings to determine whether a defendant's absence is knowing and voluntary and, if so, whether the public interest in proceeding with trial clearly outweighs the interests of the voluntarily absent defendant in attending his trial. United States v. Wallingford, 82 F.3d 278, 280 (8th Cir. 1996). The district court "should, 'at the time make a record inquiry to attempt to ascertain the explanation for the absence of the accused.'" Id. (internal citation omitted). A district court's finding on voluntary absence is reviewed for clear error. United States v. Crites, 176 F.3d 1096, 1098 (8th Cir. 1999).

On the morning of August 5, 2003, the district court entertained St. James's counsel's motion for a mistrial, for severance, or, in the alternative, for an indefinite continuance of trial, pending St. James's return to the courtroom. Reviewing Rule 43, the court determined "there is just no question that [St. James] voluntarily

-4-

absented himself from the trial." After a five-day delay in the middle of trial, the district court declared St. James had been given plenty of time to turn himself into the authorities, he had not done so, and, at that point, "it would be unfair to delay trial for the jury and the other [d]efendants and the Government." In the absence of any actual evidence or indication supporting a finding that St. James's absence was involuntary, the district court denied the motion for mistrial or severance, and ordered that St. James be continued to be tried *in absentia* under Rule 43(c)(1)(A).

We have held suicide attempts can constitute voluntary absence. <u>Crites</u>, 176 F.3d at 1097-98 (concluding trial court did not clearly err in finding defendant was voluntarily absent after suicide attempt left him unconscious and hospitalized); <u>see</u> <u>United States v. Davis</u>, 61 F.3d 291, 300-03 (5th Cir. 1995) (defendant who was hospitalized after attempting suicide during trial was voluntarily absent and waived right to be present at trial).

After the jury rendered its verdicts, St. James was given a bond hearing, during which his trial counsel asked the court to order a full psychological evaluation pursuant to 18 U.S.C. § 3552(b). The district court granted the request, and St. James received an evaluation at the Federal Medical Center, Devens in Ayers, Massachusetts, from September 10 through October 17, 2003. Two psychologists, Dr. Dennis P. Becotte (Dr. Becotte) and Dr. Jeffrey S. Sonnega (Dr. Sonnega), closely observed St. James, and both psychologists diagnosed St. James as suffering from multiple mental illnesses including post-traumatic stress disorder, dysthmia, dissociative fugue, hallucinogen abuse (ecstasy and ketamine), and a personality disorder.

In their written report to the district court, the psychologists concluded that, in times of great stress, St. James is prone to flee and to have no memory of his whereabouts or activities for several days. The psychologists' report further noted St. James previously had experienced several dissociative fugue states, which

occurred while he was in the military, after his house burned down, upon being diagnosed with HIV, when he experienced marital problems, and "most recently while he was in the courtroom for his Instant Offense." Upon realizing St. James would attempt to use these psychological findings to his benefit, the government sought and received a supplemental report from Dr. Sonnega, who explained, "The question that is now being raised by the Defendant has to do with his mental condition and 'responsibility' at the time of his flight from trial. These questions were not examined during this study and are usually ordered under a Title 18 U.S.C. Section 4242 [forensic evaluation of sanity] study."

Based on the psychologists' initial report and findings, St. James argues the district court erred in denying his motion for new trial. In an order dated January 21, 2004, the district court denied the motion for new trial, concluding "St. James's reliance on the evaluation to establish that he did not voluntarily absent himself from the trial is misplaced." Furthermore, the district court noted St. James failed to meet his burden of proving (1) his absence from trial was involuntary, or (2) his dissociative fugue lasted the entirety of his five-day flight. We agree. The district court made an appropriate and well-balanced assessment that the public interest, and the interests of the parties, jurors, and court, in continuing with the trial plainly outweighed St. James's voluntary absence from the trial. In the absence of proof establishing involuntary absence, we conclude the district court did not clearly err in finding St. James voluntarily absented himself from trial, and did not abuse its discretion in denying the motion for new trial.

### B.    Sentencing Enhancements
#### 1.    Obstruction of Justice

St. James appeals the district court's application of a two-level enhancement for obstruction of justice under section 3C1.1 of the United States Sentencing Guidelines (Guidelines). We review for clear error a district court's factual findings underlying an obstruction of justice enhancement, and we review de novo its

construction and application of the Guidelines. United States v. Mendoza-Gonzalez, 363 F.3d 788, 796 (8th Cir. 2004). Section 3C1.1 provides: "If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1. Application note 4 to section 3C1.1 provides a non-exhaustive list of examples of obstructive conduct, including "willfully failing to appear, as ordered, for a judicial proceeding." Id. at note 4, cmt. n.1; see United States v. Muro, 357 F.3d 743, 744 (8th Cir. 2004) (affirming finding defendant had obstructed justice when, fearing for his life, he fled to California before sentencing); United States v. Young, 315 F.3d 911, 913 (8th Cir. 2003) (affirming finding defendant had obstructed justice when he fled the jurisdiction before his plea and sentencing); United States v. Eagle, 133 F.3d 608, 611 (8th Cir. 1998) (affirming application of obstruction of justice enhancement in light of evidence establishing defendant "willfully" failed to appear for hearing). The government bears the burden of proving the facts necessary to support the imposition of this enhancement. United States v. Anderson, 68 F.3d 1050, 1055 (8th Cir. 1995).

At sentencing, the district court declared:

[T]he facts of the defendant's absconding are very clear. He was out on bail; he took off; he wrote a suicide note. I know he claims he doesn't remember it now, and the psychologist would maybe say he doesn't remember it now, but it was extremely disruptive to the trial as a whole.

So unless I were to find that the psychological reports preclude a finding of willfulness under that guideline, there is just no question that he ought to get the 2 points for obstruction of justice. And in reviewing the psychological reports, I'm not persuaded that they are intended to cast doubt on the willfulness of the defendant's absconding, and I just have

-7-

to take into account the fact that he made these telephone calls to people when he was away, he wrote the letter, he faked a suicide, he gave some indication he was going to turn himself in, he didn't turn himself in, and in all ways is entitled to the obstruction of justice points.

Considering the peculiar facts surrounding St. James's absence from trial, including the extended duration of his absence, his intervening conduct, and the failure of proof to demonstrate St. James's absence was involuntary, we conclude the district court's factual findings are not clearly erroneous and the court properly applied this enhancement.

### 2.    Reckless Endangerment During Flight

St. James also appeals the district court's application of an enhancement for reckless endangerment during flight, see U.S.S.G. § 3C1.2, claiming he was suffering from dissociative fugue. We review the district court's factual determinations for clear error. See United States v. Patterson, 148 F.3d 1013, 1016 (8th Cir. 1998). Factual findings made by the sentencing court that are based on the credibility of witnesses are "virtually unreviewable." United States v. Sykes, 4 F.3d 697, 700 (8th Cir. 1993) (internal citation omitted). When evidence may be viewed in two or more ways, a district court's choice of one view over another view cannot be deemed clearly erroneous. United States v. Moore, 242 F.3d 1080, 1081 (8th Cir. 2001).

Section 3C1.2 of the Guidelines provides, "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." U.S.S.G. § 3C1.2. Application note 4 further provides, "'Another person' includes any person, except a participant in the offense who willingly participated in the flight." Id. at cmt. n.4. At sentencing, the district court determined St. James's car chase in Oklahoma involving two squad cars constituted reckless endangerment under the Guidelines. In determining the two-level sentencing enhancement was warranted, the district court observed that, while fleeing from police, St. James drove his car erratically at

high speeds on congested streets, thereby placing both law enforcement personnel and the public in danger. Based on our record review, we find the district court committed no error in applying this enhancement. See Sykes, 4 F.3d at 700 (declaring police officer's testimony that fellow officer identified himself, police car had flashing red beacon on dash, and defendant had to be forced off road in order for police to apprehend him supported application of Guidelines' two-level sentencing enhancement for reckless endangerment during flight).

### C. Booker Error

Finally, St. James argues the district court's application of the obstruction of justice and reckless endangerment during flight enhancements are constitutionally unsound under United States v. Booker, 125 S. Ct. 738 (2005), because the district court enhanced St. James's sentence under a mandatory system, finding facts not admitted by St. James or proved beyond a reasonable doubt. Because St. James did not raise this claim in the district court below, we review for plain error. United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). We find plain error when: (1) there was an error; (2) the error was plain; and (3) the error affected the defendant's substantial rights. Johnson v. United States, 520 U.S. 461, 466-67 (1997); Pirani, 406 F.3d at 550. "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting Johnson, 520 U.S. at 467).

St. James satisfies the first two prongs of the plain-error test, because the district court committed error and that error is now plain after Booker. See Pirani, 406 F.3d at 550. However, St. James has not satisfied the third prong of the plain-error test, because he cannot demonstrate the district court would have imposed a more favorable sentence under an advisory sentencing Guidelines regime mandated by Booker. Id. at 553. The district court sentenced St. James to 38 months' imprisonment on Counts I and II, which is midway between the sentencing range of

33 to 41 months. Sentencing in the middle of a Guidelines range is insufficient *per se* to demonstrate a reasonable probability that a district court would have imposed a more lenient sentence under an advisory Guidelines system. Cf. id. We glean nothing in the record (1) indicating the district court would have imposed a lower sentence under an advisory sentencing system, or (2) supporting the exercise of our discretion to remand for resentencing. Johnson, 520 U.S. at 467. Having failed to meet his burden of proving prejudice, St. James is not entitled to resentencing.

## III.  CONCLUSION

The judgment of the district court is affirmed.

—————————————————