# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-4094

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Pablo Bazaldua, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: September 24, 2007
Filed: October 12, 2007

———————

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

Pablo Bazaldua pleaded guilty, pursuant to a plea agreement, to possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). In the plea agreement, which was not binding on the court, the parties anticipated a Guidelines range of 168 to 210 months, and they agreed "that none of the adjustments set forth in Guideline Sections 3A1.1 through 3C1.2 [were] applicable in this case." At sentencing, however, the district court[1] applied a two-level enhancement for reckless endangerment during flight, pursuant to U.S.S.G. § 3C1.2.

———————

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

This enhancement increased Bazaldua's Guidelines range to 210 to 262 months. The court ultimately varied downward and sentenced Bazaldua to 189 months' imprisonment. Bazaldua appeals the court's application of § 3C1.2 and the sentence imposed. We affirm.

## I. *Background*

Minnesota law enforcement officers received information from a confidential informant that Bazaldua was distributing large quantities of methamphetamine in the Twin Cities area. On March 15, 2006, officers learned that Bazaldua had recently returned from Texas with a methamphetamine shipment. Surveillance officers followed Bazaldua to a St. Paul apartment, but when the officers identified themselves and attempted to speak to Bazaldua he fled in his vehicle. With the officers following, Bazaldua drove unsafely and too fast for the road conditions, and, therefore, the officers suspended their pursuit.

Some time later, law enforcement officers relocated Bazaldua's vehicle and resumed pursuit, with their emergency lights activated. In hazardous conditions, including slippery roads caused by heavy snow and ice, Bazaldua wove in and out of traffic while being pursued. Because Bazaldua refused to stop, an officer executed a PIT maneuver,[2] causing Bazaldua's vehicle to spin out of control and come to a stop. After Bazaldua's vehicle stopped, he refused to exit the vehicle, but was subsequently placed under arrest with the assistance of a police dog.

---

[2]A "PIT maneuver" is a method used by police to force a pursued vehicle to abruptly turn sideways to the direction of travel, by bumping the back side of the pursued vehicle with the police vehicle, causing the fleeing driver to lose control and stop. http://www.wikipedia.org (last visited Sept. 20, 2007). "PIT" stands for either "Precision Immobilization Technique," "Pursuit Intervention Technique," or "Parallel Immobilization Technique," depending on the police department using it. *Id.*

The police investigation revealed that Bazaldua stored methamphetamine in a Minneapolis storage facility. After obtaining a search warrant for the storage unit, officers searched the unit and recovered approximately two pounds of methamphetamine. According to laboratory analysis, the recovered methamphetamine weighed 861 grams (actual). A one-count indictment with forfeiture allegations was filed with the District of Minnesota charging Bazaldua with possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

Bazaldua pleaded guilty to the charge, pursuant to a plea agreement with the government. The plea agreement anticipated a base offense level of 36 based upon the quantity of methamphetamine seized. The parties also anticipated a three-level reduction for Bazaldua's acceptance of responsibility, resulting in a total offense level of 33. With a criminal history Category III and a total offense level of 33, the parties considered Bazaldua's advisory Guideline range to be 168 to 210 months. In paragraph 6(c) of the plea agreement, "[t]he parties agree[d] that none of the adjustments set forth in Guideline Sections 3A1.1 through 3C1.2 [were] applicable in this case."

After Bazaldua entered his guilty plea, the court ordered the United States Probation Office to prepare a Presentence Investigation Report (PSR). The PSR agreed with the parties' stipulations that: Bazaldua's base offense level was 36; the offense level should be reduced three levels for acceptance of responsibility; and Bazaldua's criminal history was a Category III. In contrast to the plea agreement, however, the PSR recommended that the district court apply the two-level enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2. With the application of § 3C1.2, Bazaldua's Guideline range became 210 to 262 months.

Bazaldua did not file any objections to the factual assertions contained in the PSR, but objected to the § 3C1.2 enhancement. Thus, while Bazaldua acknowledged that the underlying events occurred, he asserted that his flight did not rise to the level of reckless endangerment required by § 3C1.2, because he only engaged in a short "chase," and that no damage was done to any person or property. The government did not object to the application of the enhancement, but urged the court to impose a sentence within the Guidelines range anticipated in the plea agreement.

The district court adopted the facts contained in the PSR, and not bound by the plea agreement, it applied § 3C1.2, thus finding the appropriate Guideline range to be 210 to 262 months. The court, however, varied downward and imposed a sentence of 189 months. In the court's Statement of Reasons, it explained that the sentence was imposed because it was "in the middle of the guideline range contemplated in the plea agreement" and was "sufficient to punish the defendant and meet[] with other statutory requirements."

## II. *Discussion*

Bazaldua contends that the district court erred in applying U.S.S.G. § 3C1.2 because there was an insufficient factual basis for finding that he knowingly fled from law enforcement or that his conduct was "reckless." "We review for clear error a district court's findings with respect to reckless endangerment during flight." *United States v. Rice*, 184 F.3d 740, 742 (8th Cir. 1999).

Section 3C1.2 states that a defendant's offense level should be increased by two levels "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Commentary note 2 to § 3C1.2 states that the term "Reckless" is defined in the commentary to § 2A1.4. U.S.S.G. § 3C1.2 com. n.2. The commentary to § 2A1.4 states that "'[r]eckless' means a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard

that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 com. n.1. "For purposes of [§ 3C1.2], "reckless" means that the conduct was at least reckless and includes any higher level of culpability." U.S.S.G. § 3C1.2 com. n.2.

The undisputed facts contained within the PSR provide sufficient factual basis for the district court's ruling applying § 3C1.2 . Regarding Bazaldua's knowledge that he was being pursued by and fled from law enforcement, the offense conduct section of the PSR[3] stated that law enforcement officers "identified themselves" to Bazaldua in an attempt to speak with him, but that Bazaldua fled. The officers followed him for a period of time before calling off the pursuit due to Bazaldua's unsafe driving. When the officers spotted Bazaldua the second time, they "pursued him again in and out of traffic with emergency lights activated," but Bazaldua refused to stop, forcing the officers to execute a PIT maneuver to spin out his vehicle and end the pursuit. Even after the car was stopped, Bazaldua refused to exit the vehicle until a police K-9 assisted the officers, allowing Bazaldua to be arrested. In light of these facts, the district court did not clearly err in finding that Bazaldua knew that he was fleeing from law enforcement.[4]

---

[3]Bazaldua did not object to the facts contained in the PSR, and the district court adopted those facts in full. Accordingly, those facts are deemed admitted. *United States v. Porter*, 439 F.3d 845, 849 (8th Cir. 2006).

[4]*See United States v. Sykes*, 4 F.3d 697, 700 (8th Cir. 1993) (finding defendant knew that he was fleeing law enforcement when officers identified themselves, drove car with emergency light activated, and police had to run defendant off road to apprehend him); *United States v. Rice*, 184 F.3d 740, 742 (8th Cir. 1999) (finding defendant knew that law enforcement was present when officers wore badges and were clearly identified); *United States v. Moore*, 242 F.3d 1080 (8th Cir. 2001) (rejecting defendant's argument that government had not proved that he knowingly fled from police where defendant fled after officers had identified themselves verbally, officers in front of defendant's car were wearing raid vests with "POLICE" on them, police pursued defendant with flashing lights activated, and defendant raced

Likewise, the district court did not err in finding that Bazaldua "was aware of the risk created by his conduct" and that his disregard of that risk "constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 com. n.1. The facts show Bazaldua was driving in heavy snow, too fast for the slick road conditions, and weaving in and out of traffic while being pursued by law enforcement, refusing to stop until he was forcibly spun out.

We also reject Bazaldua's argument that § 3C1.2 does not apply because no other person or property was injured or damaged during the chase. The enhancement does not require any injury or damage. It only requires that the defendant's actions create "a *substantial risk* of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." *Id.* (emphasis added); *see also United States v. Harper*, 466 F.3d 634, 649–50 (8th Cir. 2006) (finding no clear error in applying § 3C1.2 and concluding that the fact that defendant was the only one injured did not alter the risk of bodily injury created by his flight). The risk of death or serious bodily injury posed to other drivers and the pursuing officers is patently obvious in the facts of this case.

We hold that the district court's factual findings for application of U.S.S.G. § 3C1.2 were not clearly erroneous. The court correctly determined that Bazaldua's actions recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement. *See United States v. St. James*, 415 F.3d 800, 806 (8th Cir. 2005) (finding no error in applying § 3C1.2 where defendant fled from police, driving "erratically at high speeds on congested streets, thereby placing both law enforcement personnel and the public in danger"); *United States v. Caldwell*, 192 Fed. Appx. 576 (8th Cir. 2006) (unpublished) (finding

down highway, ran lights, and discarded contraband while being followed).

imposition of § 3C1.2 was not clearly erroneous where defendant was driving erratically and speeding on a congested highway while fleeing from law enforcement officers in an attempt to evade arrest on drug charges).

Finally, the district court varied downward and sentenced Bazaldua within the sentencing range that would have applied had the district court not found U.S.S.G. § 3C1.2 applicable. We cannot say such a sentence is unreasonable.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____