# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1589

_____

United States of America,

        Appellee,

v.

Rickey Bates,

        Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Eastern District of Missouri.
\*
\*
\*

_____

Submitted: December 9, 2008
Filed: April 3, 2009

_____

Before MELLOY and BENTON, Circuit Judges, and DOTY,[1] District Judge.

_____

MELLOY, Circuit Judge.

A jury convicted Rickey Bates of being a felon in unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Bates to 110 months' imprisonment. Bates appeals his sentence. We affirm in part, reverse in part, and remand for further proceedings.

_____

[1] The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

I.

At approximately 12:30 a.m. on December 8, 2006, law enforcement officers observed a stolen vehicle with two occupants driving on a street in St. Louis. Police later identified the driver as Demetrice Thomas and the passenger as Bates.

The officers contacted other members of law enforcement for assistance and surveilled the vehicle until the other officers arrived. When Thomas stopped the vehicle in the middle of a city block, two officers activated their emergency lights and drove up behind him. Thomas sped off with Bates still in the passenger seat.

Within approximately one block, Thomas, while driving at a high rate of speed, ran over a set of spike strips that officers had placed in the vicinity. The spike strips deflated three of the stolen vehicle's tires. Thomas continued to flee from police in the stolen vehicle for several blocks until he lost control. Thomas and Bates then jumped from the moving vehicle just before it struck a light pole.

After Thomas and Bates jumped from the vehicle, officers wearing raid jackets marked "police" ordered them to stop. Thomas and Bates ignored the officers' commands and attempted to flee on foot. An officer pursued Bates between private homes and through private back yards before tackling him in the front yard of a private residence. Bates then struggled on the ground with the officer, continually attempting to reach toward his own waistband until the officer handcuffed him. Once Bates was handcuffed, officers discovered a loaded and operable .22-caliber pistol in Bates's waistband. The officers arrested Bates and subsequently found .38 grams of cocaine base in a plastic baggie in Bates's coat pocket.

Because Bates was a felon, a federal grand jury indicted Bates for being a felon in unlawful possession of a firearm. Bates proceeded to trial and a jury convicted him of that charge.

Following Bates's conviction, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR"). Applying the U.S. Sentencing Guidelines ("USSG"), the PSR stated that Bates's base offense level was 20. It recommended a four-level enhancement under USSG § 2K2.1(b)(6) because Bates had possessed the firearm "in connection with another felony offense"—possessing cocaine base. It also recommended a two-level enhancement under USSG § 3C1.2 because Bates had recklessly endangered others in the course of fleeing from law enforcement officers. These enhancements made Bates's recommended total offense level 26. Because Bates had a category-V criminal history, his advisory sentencing range was 110 to 137 months.

Bates objected to the recommended enhancements in the PSR. At sentencing, the district court overruled Bates's objections, adopted the recommendations contained in the PSR, and sentenced Bates to 110 months' imprisonment.

## II.

On appeal, Bates, through counsel, argued that the district court erred by applying § 3C1.2's reckless-endangerment enhancement. Bates, however, subsequently filed a pro se brief also contesting the district court's application of § 2K2.1(b)(6). After receiving Bates's pro se brief, we determined that his argument had possible merit and directed supplemental briefing on § 2K2.1(b)(6)'s application to his sentence. With the issues fully briefed, we address the arguments in the order in which they were presented.

## A.

Bates's first argument is that the district court erred in applying § 3C1.2's two-level enhancement for recklessly endangering others in the course of fleeing from law enforcement officers. "[A district court] is allowed to make findings of facts under

a preponderance of the evidence standard to support an enhancement to the guideline range so long as it treats the Guidelines as advisory." United States v. Perry, 548 F.3d 688, 693 (8th Cir. 2008). "We review for clear error a district court's findings with respect to reckless endangerment during flight." United States v. Bazaldua, 506 F.3d 671, 674 (8th Cir. 2007) (quotation omitted).

Section 3C1.2 provides, "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." U.S. Sentencing Guidelines Manual § 3C1.2 (2007). For this provision, "reckless" means a "'situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.'" Bazaldua, 506 F.3d at 674 (quoting USSG § 2A1.4, cmt. (n.1)). For purposes of § 3C1.2, "reckless" also "'includes any higher level of culpability.'" Id. (quoting USSG § 3C1.2 cmt. (n.2)). "The term 'during flight' should be 'construed broadly' and includes conduct 'in the course of resisting arrest.'" United States v. McDonald, 521 F.3d 975, 979 (8th Cir. 2008) (quoting USSG § 3C1.2, cmt. (n.3)).

At sentencing, the district court cited evidence of Bates's flight from and struggle with officers as sufficient factual grounds to apply § 3C1.2's enhancement. Bates argues this was error because he had no control over the stolen vehicle, did not aid or abet Thomas in fleeing with the vehicle, and did not brandish his weapon during the chase.

There is sufficient evidence in the record to support the district court's application of § 3C1.2. It is undisputed that Bates, while armed with a loaded weapon, knowingly jumped from a moving vehicle that police, with emergency lights activated, were pursuing. See Bazaldua, 506 F.3d at 674 (holding that a district court did not clearly err in concluding that a defendant had "knowledge that he was being

pursued by and fled from law enforcement" where officers "identified themselves" and pursued the defendant "in and out of traffic with emergency lights activated"). It is also undisputed that Bates then intentionally ignored commands of officers wearing raid jackets marked "police" to stop, fled from officers on foot through a residential neighborhood in the middle of the night, and, while armed with a loaded weapon, created a situation that caused a pursuing officer to tackle him to prevent his escape. See United States v. Moore, 242 F.3d 1080, 1082 (8th Cir. 2001) (holding that a district court did not clearly err in finding that a defendant knew "he was being pursued by the police as he fled," as the enhancement requires, when police officers identified themselves, wore raid vests marked "police," and activated their emergency lights when pursuing the defendant in their vehicle).

Finally, there is sufficient evidence in the record to support the district court's conclusion that Bates, while armed with a loaded weapon, intentionally struggled on the ground with the officer and continually reached toward his waistband during the altercation.[2] See United States v. Williams, 278 F. App'x 279, 281 (4th Cir. 2008) (per curium) (unpublished) ("A struggle in which all the parties are armed carries an obvious risk that the struggle might escalate to the point that a firearm is used, or discharges accidentally."); see also McDonald, 521 F.3d at 980 (applying § 3C1.2's reckless-endangerment enhancement where officers had to use force to arrest the

---

[2] Although Bates now claims he was merely trying to use his hands to get up, the district court credited the officer's testimony that Bates repeatedly attempted to reach for his own waistband during the struggle. Our standard of review requires us to credit the district court's finding. See United States v. St. James, 415 F.3d 800, 806 (8th Cir. 2005) ("When evidence may be viewed in two or more ways, a district court's choice of one view over another view cannot be deemed clearly erroneous."). Also, the PSR—which the district court adopted at sentencing—notes that Bates continually reached for his waistband during the struggle with the officer. Bates did not object to that statement in the PSR. Thus, we deem that fact admitted. See Bazaldua, 506 F.3d at 674 n.3 (stating that facts in a PSR are deemed admitted when a defendant does not object to them and the district court adopts the PSR).

defendant and faced "a heightened risk of physical injury"); United States v. Lee, 199 F.3d 16, 17 (1st Cir. 1999) ("[W]hatever [the defendant's] purpose, his efforts to seize his gun did create a substantial risk of bodily injury, whether from accidental discharge or the threat of fire from the police."). These facts sufficiently support the district court's conclusion that a preponderance of the evidence demonstrated that Bates recklessly created a substantial risk of serious harm to others while fleeing from police. Thus, we affirm the district court's decision to enhance Bates's advisory-sentence calculation under § 3C1.2.

B.

Bates's second argument is that the district court erred by applying § 2K2.1(b)(6)'s four-point enhancement for possessing a firearm in connection with another felony offense. As stated above, Bates did not raise this issue in his original appeal. Nevertheless, he filed a pro se brief arguing that this enhancement did not apply and, based on the potential merit to his argument, we ordered supplemental briefing on this issue.

Section § 2K2.1(b)(6) provides, "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." USSG § 2K2.1(b)(6). The district court assessed this enhancement because it found that Bates's firearm possession was connected to another felony offense—Bates's possession of cocaine base. "The district court's determination that the defendant possessed the firearm[] in connection with another felony is a factual finding that we review for clear error." United States v. Smith, 535 F.3d 883, 885 (8th Cir. 2008).

Bates argues that because simple possession of less than one gram of cocaine base is not a felony under federal law, the district court erred in finding he possessed the firearm in relation to "another felony offense." This claim is meritless. "'Another felony offense', for purposes of [§ 2K2.1](b)(6), means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." USSG § 2K2.1(b)(6), cmt. (n.14(C)). Under Missouri law, Bates's possession of cocaine base is a class C felony, punishable by up to seven years' imprisonment. Mo. Rev. Stat. §§ 195.202, 558.011. Therefore, it qualifies as "another felony offense" under § 2K2.1(b)(6).

Bates's supplemental brief further argues that the district court erred in applying § 2K2.1(b)(6) because it did not find that the firearm and drug felonies were adequately connected.[3] We find merit to this claim.

In United States v. Blankenship, 552 F.3d 703 (8th Cir. 2009), we recently addressed § 2K2.1(b)(6)'s application when the "other felony offense" in question is simple drug possession rather than drug trafficking.[4] Id. at 704–05. We stated, "If the underlying drug offense is for simple possession, the district court may still apply the [§ 2K2.1(b)(6)] adjustment, but only after making a finding that the firearm facilitated the drug offense." Id. at 705.

---

[3] The Government asserts that Bates waived this argument because he did not specifically raise it in his pro se brief. Bates, however, raised this argument below as his sole objection to the court's application of § 2K2.1(b)(6). Construing Bates's pro se brief liberally, we therefore found his brief sufficient to raise this issue such that supplemental briefing was necessary. See Fed. Express Corp. v. Holowecki, 128 S. Ct. 1147, 1158 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties.").

[4] We note that the district court did not have the benefit of our decision in Blankenship at the time of Bates's sentencing.

Here, the parties agree that Bates's other felony offense involved possessing only a "user" quantity of drugs. The district court, however, did not find that Bates's firearm facilitated his drug-possession offense, apparently accepting the Government's argument that the firearm and drugs were connected because "[b]oth the guns [sic] and drugs were found on [Bates's] person." Sent. Tr. 6–7. Under <u>Blankenship</u>, these findings are insufficient to warrant § 2K2.1(b)(6)'s application.

The Government counters that the district court implicitly found an adequate connection between Bates's firearm and drug felonies because the court rejected Bates's argument on this point. An implicit finding, however, does not satisfy <u>Blankenship</u>'s command that:

> when the defendant subject to a 2K2.1(b)(6) adjustment possesses a user amount of drugs and is not a trafficker, instead of automatically applying the adjustment when both drugs and weapons are involved in the offense, the district court must affirmatively make a finding that the weapon or weapons facilitated the drug offense before applying the adjustment.

<u>Blankenship</u>, 552 F.3d at 705. We discern no such finding in the record.

Finally, we reject the Government's alternative contention that any error at sentencing was harmless. The district court's application of § 2K2.1(b)(6) added four levels to Bates's total-offense-level calculation, increasing his advisory sentencing range from 77 to 96 months to 110 to 137 months. Therefore, as in <u>Blankenship</u>, we reverse the district court's ruling and remand the case for further proceedings to allow the district court to make appropriate findings regarding § 2K2.1(b)(6)'s applicability.

## III.

For the foregoing reasons, we affirm the district court in part, reverse the district court in part, and remand for further proceedings.

_____