**Jason Eric FINNEGAN, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A08–0777.

Court of Appeals of Minnesota.

May 5, 2009.

Lawrence Hammerling, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN, and David J. Hauser, Otter Tail County Attorney, Fergus Falls, MN, for respondent.

Considered and decided by WORKE, Presiding Judge; HUDSON, Judge; and CONNOLLY, Judge.

## OPINION

WORKE, Judge.

On appeal from the denial of a postconviction-relief petition challenging his first-degree criminal-sexual-conduct conviction, appellant argues that the district court abused its discretion in ruling that (1) he voluntarily absented himself from trial after he was hospitalized for a drug overdose and that it was proper to conduct his trial in absentia, and (2) the prosecutor did not commit prejudicial misconduct in closing argument. Because the record supports the finding that appellant voluntarily absented himself by attempting suicide, we conclude that appellant waived his right to be present at all stages of trial. We also conclude that the prosecutor did not commit prejudicial misconduct, and we affirm.

## FACTS

On February 4, 2005, 14–year–old M.F. went to a school dance. When M.F. returned home with her sister and her sister's boyfriend, her older sister, S.F., was there with her boyfriend and appellant Jason Eric Finnegan, who was a friend of S.F. At approximately 11:30 p.m., M.F. went down to the basement with her sisters, their boyfriends, and appellant to play darts. After approximately one hour, appellant and M.F. were left alone in the basement. Appellant asked M.F. to fix some things on his cell phone. After fixing appellant's phone M.F. fell asleep on the love seat. A short time later, M.F. was getting up from the love seat and appellant wrapped his arm around her neck and pulled her to the ground. Appellant pinned M.F. to the ground and asked her to lie next to him. Appellant tightened his grip around M.F.'s neck and told her to take her pants off. M.F. told appellant "no." Appellant covered M.F.'s mouth and pushed her neck one way and pulled her body in the opposite direction. Appellant told M.F. that if she did not take off her pants he would break her neck. Appellant forced M.F. to remove all of her clothing, put a sock into her mouth, and had sexual intercourse with her.

M.F. did not tell anyone what happened until Monday when she returned to school. M.F. told one of her friends what appellant did to her. M.F. then told her sister, a school counselor, and then her mother. M.F. went to a physician and her father reported the sexual assault to the sheriff's office. The physician who examined M.F. concluded that M.F. had been sexually assaulted. Deputy Barry Fitzgibbons met with M.F., who reported that appellant raped her and that she had not been sexually active before the incident. Deputy Al Frank spoke with appellant. Appellant admitted that he had been in the basement with M.F. on the night of the incident. Appellant, however, claimed that he did not remember anything else due to the fact that he had smoked marijuana that night. When asked if he had sex with M.F., appellant said "no, I don't remember."

Appellant was charged with first-degree criminal sexual conduct and two counts of third-degree criminal sexual conduct. An omnibus hearing was scheduled for August 15, 2005. Appellant failed to appear and an arrest warrant was issued. Appellant was arrested in January 2006 and released pending trial, which commenced on May 4, 2006. At appellant's trial, M.F. testified regarding the assault, and officers testified regarding their investigation. Reports were admitted into evidence that show that a DNA profile obtained from the sperm cell fraction taken from a piece of carpet from the basement floor matched appellant's DNA profile. There were also nonsperm cell fractions obtained from the carpet that included a mixture of DNA from two or more individuals; the predominant DNA profile obtained matched M.F.'s profile and appellant could not be excluded as a possible contributor to the minor DNA types. At the conclusion of the first day of trial, the district court stated that the trial would be wrapping up early the next day.

Appellant did not appear for the second day of trial. Defense counsel stated that appellant's mother contacted her that morning and indicated that appellant was in bed and unresponsive. Appellant's mother requested that someone come to their home. The prosecutor informed the district court that she received a call from Sergeant Fitzgibbons who went to appellant's home to transport him. Fitzgibbons reported that he found appellant suffering from a medical condition, likely an overdose because appellant was drooling, his eyes were in the back of his head, and he was not able to speak. The prosecutor requested that the trial proceed because

appellant made a choice to make himself unavailable. The district court found that appellant did voluntarily absent himself from trial because he "did something last night, according to his mother, and the officers that arrived at his home found him to be unresponsive. He was aware that we were in trial, he was aware that he was supposed to be here today, and I'm also finding that his behavior, because he's not here, is disruptive." The district court found that appellant waived his appearance, and instructed the jury:

> Members of the jury, we are going to proceed with the trial and you will notice that [appellant] is not present because of unforeseen circumstances. You are not to hold that fact against [appellant] while we proceed with the trial, and you are not to hold that against him during your deliberations.

Around noon, outside the presence of the jury, the prosecutor updated the district court on appellant's condition. The preliminary report from appellant's treating physician concluded that appellant overdosed on sleeping pills—there were 51 unaccounted-for pills. Appellant remained unaware of his surroundings and was unable to communicate. The prosecutor reminded the district court that appellant had a history of failing to appear; he failed to appear at his omnibus hearing and had a warrant open for a significant period of time.

The jury found appellant guilty as charged. A warrant was issued for appellant's arrest; he appeared on May 8, 2006, and the district court advised him:

> [J]ust to let you know, it was the Court's determination that it was by your own willful acts that you failed to appear for the second day of your trial. And because of your own acts, you made yourself unavailable and our jury was seated, the trial was nearly completed, and it was my decision that we would go for-

ward with the trial without your presence, so that's what we did.

Appellant requested a new trial, and the district court denied the motion.

On May 10, 2006, the district court ordered that appellant be evaluated and treated by the appropriate clinical psychologists or psychiatrists. The district court received a copy of appellant's psychological evaluation on May 30, 2006. The evaluation indicates that on May 5, 2006, appellant was admitted to the "Fergus Falls RTC due to being intoxicated on methamphetamine, as well as being stressed due to his present legal predicament and having suicidal ideation." On June 16, 2006, the district court sentenced appellant to the presumptive sentence of 144 months in prison.

On September 7, 2007, appellant filed a petition for postconviction relief, arguing that his trial was erroneously conducted in his absence and that the prosecutor committed prejudicial misconduct. Appellant waived an evidentiary hearing and the district court, a different judge than who presided over appellant's trial, denied appellant's petition after finding that appellant voluntarily absented himself from trial by attempting suicide and that the prosecutor did not commit prejudicial misconduct. This appeal follows.

## ISSUES

I. Did the district court abuse its discretion in denying appellant's petition for postconviction relief by finding that appellant waived his right to be present at trial because he voluntarily absented himself by attempting suicide?

II. Did the district court abuse its discretion in denying appellant's petition for postconviction relief by finding that the prosecutor did not commit prejudicial misconduct?

## ANALYSIS

 Appellant argues that the district court abused its discretion in denying him postconviction relief. On a petition for postconviction relief, the petitioner bears the burden of establishing facts that warrant relief. Minn.Stat. § 590.04, subd. 3 (2006). To meet this burden, allegations must be more than argumentative assertions. *Schleicher v. State*, 718 N.W.2d 440, 444 (Minn.2006). We examine whether the district court's findings are supported by sufficient evidence, *Russell v. State*, 562 N.W.2d 670, 672 (Minn.1997), and review legal issues de novo. *Butala v. State*, 664 N.W.2d 333, 338 (Minn.2003). This court reviews a summary denial of a postconviction petition for an abuse of discretion. *Powers v. State*, 695 N.W.2d 371, 374 (Minn.2005).

### Trial in absentia

 Appellant first argues that the district court abused its discretion in denying relief because he did not waive his constitutional right to be present at trial. The right to be present at all stages of one's trial is guaranteed by the Sixth Amendment's Confrontation Clause. U.S. Const. amend. VI; Minn. Const. art. I, § 6. Minn. R.Crim. P. 26.03, subd. 1(1) requires a defendant's presence "at every stage of the trial." Under rule 26.03, subd. 1(2), however, a "defendant shall be considered to waive the right to be present whenever: [ ][he] voluntarily and without justification absents himself [ ] after trial has commenced." A voluntary absence after "clear and unequivocal notice of the commencement of trial" is a "knowing waiver of constitutional rights." *State v. Johnson*, 483 N.W.2d 109, 110 (Minn.App. 1992), *review denied* (Minn. June 10, 1992); *see also State v. Stout*, 273 N.W.2d 621, 623 (Minn.1978) (concluding that a defendant's voluntary absence after start of trial is construed as effective waiver of right to be present). The defendant bears the heavy burden of showing that his absence from trial was involuntary. *State v. Cassidy*, 567 N.W.2d 707, 710 (Minn.1997).

In denying appellant's postconviction petition, the district court found that "the trial judge ruled that [appellant] voluntarily absented himself from the trial, acting of his own volition during the evening, and doing something that found him to be unresponsive the next morning, knowing that the trial would be proceeding." The district court concluded that a suicide attempt constitutes a voluntary absence from trial. Appellant argues that the district court abused its discretion in relying on the trial judge's speculative and inadequate findings about his condition based on preliminary information and hearsay.

There is no caselaw in Minnesota holding that a suicide attempt constitutes a voluntary absence from trial. But the Eighth Circuit has held that a suicide attempt can constitute a voluntary absence. *United States v. St. James*, 415 F.3d 800, 804–05 (8th Cir.2005) (holding that defendant who fled the state and then attempted suicide failed to show his absence from trial was involuntary); *United States v. Crites*, 176 F.3d 1096, 1098 (8th Cir.1999); *see also United States v. Davis*, 61 F.3d 291, 302–03 (5th Cir.1995) (concluding defendant who was hospitalized after attempting suicide during trial was voluntarily absent and waived right to be present at trial); *but see United States v. Latham*, 874 F.2d 852, 858–59 (1st Cir.1989) (concluding defendant did not voluntarily absent himself from trial after he ingested a potentially lethal overdose of cocaine to calm his nerves and without intent to commit suicide).

*Crites* is very similar to the facts here. After the government rested its case, the defendant tried to commit suicide by ingesting a mix of alcohol, methamphetamine, and prescription medications.

*Crites*, 176 F.3d at 1097. The district court found that "Crites chose not to attend the last day of his trial, but instead voluntarily took steps to end his life and to absent himself permanently from the trial proceedings." *Id.* at 1098. The record showed that Crites left a suicide note, refused medical attention, and attempted to strike an officer who tried to convince him to go to the hospital. *Id.* The Eighth Circuit concluded that the district court did not err in finding that Crites was absent "because of his own voluntary conduct over an extended period of time last evening, . . . rendering him now unable to be here, even though he knew he had . . . the right to be here." *Id.*

We conclude that the district court did not err in finding that appellant voluntarily absented himself from trial, and hold that a suicide attempt can constitute a voluntary and unjustified absence from trial constituting a waiver of the right to be present. Appellant knew that he was required to be in court the next morning for the final day of his trial. When the trial judge made the initial determination, it appeared that appellant overdosed. The preliminary report concluded that appellant overdosed on sleeping pills and the final report indicated that appellant overdosed on methamphetamine. Even if appellant did not attempt suicide, which was later confirmed in the psychological-evaluation report, he did something that made it impossible for him to be transported to his trial. Appellant also had a history of absenting himself. Appellant was aware that his omnibus hearing was scheduled for August 15, 2005, but he failed to appear and remained absent until he was arrested in January 2006. Finally, the jury was instructed that appellant's absence should not be held against him. And we presume that the jury followed the district court's instructions. *State v. Miller*, 573 N.W.2d 661, 675 (Minn.1998).

We emphasize the importance of having a sufficient record to review the district court's findings on whether a defendant waives his right to be present at every stage of his trial. Here, the trial judge's findings were sparse as to the basis for concluding that appellant was voluntarily absent; nevertheless, our review of the entire record supports the conclusion that appellant failed to meet his heavy burden of establishing that he did not voluntarily and unjustifiably absent himself and waive his right to be present at his trial. First, appellant had a history of absenting himself, specifically when he failed to appear at an earlier hearing and had a warrant open for a significant period of time. Second, appellant was well aware that his presence was required at his trial; at the conclusion of the first day of trial, the trial judge stated that trial would proceed and conclude the next day. Finally, appellant's acts were deliberate; he purposefully ingested methamphetamines that caused him to become unresponsive. Accordingly, we conclude that the district court did not abuse its discretion in denying appellant's request for postconviction relief.

### Prosecutorial misconduct

Appellant also argues that the district court abused its discretion in denying relief because the prosecutor committed prejudicial misconduct in closing argument. Appellant argues that the prosecutor: (1) mischaracterized the presumption of innocence, (2) improperly shifted the burden of proof to appellant by commenting on his failure to produce evidence, and (3) improperly inflamed the passions of the jury.

#### Presumption of innocence

Appellant argues that the prosecutor improperly argued that the presumption of innocence ends outside the courtroom door. Appellant, however, did not object to this part of the prosecutor's

closing argument. Failure to object to comments or to seek a curative instruction "weigh[s] heavily" against reversal, because the district court might have been able to "ameliorate the effect of improper prosecutorial argument." *State v. Washington*, 521 N.W.2d 35, 40 (Minn.1994). For alleged unobjected-to misconduct, the plain-error doctrine applies. *State v. Dobbins*, 725 N.W.2d 492, 508 (Minn.2006). Plain error is error that is clear or obvious, usually shown by an error that contravened case law, rules, or a standard of conduct. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn.2006). If appellant can show plain error, the burden shifts to the state to prove that the misconduct did not affect appellant's substantial rights. *Id.*

■■■■■ "The presumption of innocence is a basic component of the fundamental right to a fair trial." *State v. Bowles*, 530 N.W.2d 521, 529 (Minn.1995). It is improper for a prosecutor to misstate the presumption of innocence in a criminal case. *Ramey*, 721 N.W.2d at 300. It is, for example, improper for a prosecutor to state that

> [w]hen the State has proven its case the presumption of innocence falls like a cloak, it drops, it disappears. The defendant was presumed innocent when he [committed the crime]; he's presumed innocent at the lineup; he's presumed innocent at the preliminary hearing; he's presumed innocent now until you get to the jury room, and that is the way it should be, and then it disappears.

*State v. Jensen*, 308 Minn. 377, 379, 242 N.W.2d 109, 111 (1976). In *State v. Bohlsen*, the supreme court held that it was not prejudicial error for a prosecutor to state that the defendant no longer enjoyed the presumption of innocence when the "jury [is] satisfied that the State has proved its case beyond a reasonable doubt, not all doubt." 526 N.W.2d 49, 50 n. 1 (Minn. 1994). The court, however, cautioned

prosecutors against making similar arguments in the future. *Id.* at 50. In *State v. Young*, the following argument was held to be proper because it was analogous to the jury instructions:

> When the trial began, the Court told you that that young man right there is an innocent man. He was. Until the defense stood up and rested. Because at that time the state had presented to you sufficient evidence to find the defendant guilty of all the crimes that the Court just gave you the instructions on. He's no long [sic] an innocent man. The evidence that's been presented to you by the state has shown you that he's guilty beyond a reasonable doubt.

710 N.W.2d 272, 280 (Minn.2006); *see also* 10 *Minnesota Practice*, CRIMJIG 3.02 (2006) ("The defendant is presumed innocent of the charge made. This presumption remains with the defendant unless and until the defendant has been proven guilty beyond a reasonable doubt.").

■■■■ Here, the prosecutor stated:

> [O]n behalf of the State I stand here to prove this case to you beyond a reasonable doubt.... Not beyond all doubt, not beyond all certainty, but that there's reasonable doubt and if there's any doubt in your minds at this point that for whatever reason [M.F.] was not assaulted, it certainly is not reasonable from all the evidence that the State presented, all the corroborating evidence to go along with her statement here yesterday. And that's why, ladies and gentlemen, at this point, I'm asking for a guilty verdict.... [Appellant] had a fair trial, *there's no longer a presumption of innocence when you get back there, if you find that I've met that burden* and that I've proved each and every one of those elements beyond a reasonable doubt.

(Emphasis added.) The statement was similar to that in *Young* and analogous to the jury instructions. In *Young*, the prosecutor stated that the defendant was innocent until the state rested because at that point the state had proven that the defendant was guilty beyond a reasonable doubt. 710 N.W.2d at 280. The jury instructions provide that the presumption of innocence remains with the defendant *unless and until* the state has proven that the defendant is guilty beyond a reasonable doubt. 10 *Minnesota Practice*, CRIMJIG 3.02; *see also The American Heritage College Dictionary* 1477, 1481 (3d ed.2000) (defining "unless" to mean "[e]xcept on the condition that") (defining "until" to mean "[u]p to the time of"). Here, the prosecutor stated that appellant is no longer presumed innocent *if* the jury finds that the state has met its burden of proving guilt beyond a reasonable doubt. "If" means "[i]n the event that"; "[o]n the condition that"; "[g]ranting that." *The American Heritage College Dictionary* 675 (3d ed.2000). Thus, the prosecutor argued that the presumption of innocence was conditioned on whether the state had proved the elements of the offenses beyond a reasonable doubt. The district court did not abuse its discretion in finding that the prosecutor's statement was not plain error.

### Shift burden of proof

Appellant also argues that the prosecutor improperly shifted the burden of proof to appellant by commenting on his failure to produce evidence. Appellant failed to object; thus, we review for plain error. *See Dobbins*, 725 N.W.2d at 508.

■ ■ The state bears the burden of proving all the elements of an offense beyond a reasonable doubt, and the prosecutor is prohibited from shifting the burden of proof to a defendant to prove his innocence. *State v. Strommen*, 648 N.W.2d 681, 690 (Minn.2002). Misstatements of

the burden of proof are "highly improper" and, if demonstrated, constitute prosecutorial misconduct. *State v. Coleman*, 373 N.W.2d 777, 782 (Minn.1985). A prosecutor misstates the burden of proof when he or she tells a jury to "weigh the story in each hand and decide which one is most reasonable, which one makes the most sense." *Strommen*, 648 N.W.2d at 690. But "a remark by a prosecutor on the lack of evidence regarding the defense's theory [does] not shift the burden of proof to the defense." *State v. Gassler*, 505 N.W.2d 62, 69 (Minn.1993) (citing *State v. Race*, 383 N.W.2d 656, 664 (Minn.1986)). In *Race*, the supreme court stated: "The prosecutor's remarks concerning the lack of, or paucity of, evidence [supporting appellant's theory], then, is viewed as not shifting [the] burden to the defense, but rather as challenging one of the defense's rebuttal theories." 383 N.W.2d at 664.

■ ■ Here, the prosecutor commented on appellant's ability to remember almost everything about the night of the assault except for the assault itself. The prosecutor stated that appellant told Sergeant Frank the following happened that night:

> they played darts, how they were downstairs and they were hanging out and even up to the last items of business that occurred before the act of sexual intercourse, he recalls all of the details, he recalls [M.F.] sitting on the couch, fixing his cell phone, and as she had told you, that's what she recalls doing before she fell asleep.... But *when Sergeant Frank asks about details of the intercourse that [M.F.] says happened, then he conveniently says he doesn't recall.* And then when asked, even says it could have happened, doesn't remember, was high on marijuana, it's not reasonable. *He remembered everything he wanted to and then simply does not describe what happened to Deputy Frank* and it's cer-

tainly not a defense. Even if [appellant] was drinking, smoking, doing whatever he chose to do that evening at that house, it certainly doesn't make it okay for him to excuse his behavior by assaulting a 14–year–old girl, [M.F.], certainly not a defense in this case.

(Emphasis added.) The prosecutor's comments taken as a whole do not show plain error. *See State v. Daniels*, 332 N.W.2d 172, 180 (Minn.1983) (stating that the prosecutor's argument "must be taken as a whole to determine if it provides a basis for reversal"). The prosecutor's remark on appellant's failure to tell police about the sexual intercourse was not a comment on appellant's failure to present evidence at trial, and did not shift the burden. Therefore, the district court did not abuse its discretion in finding that there was no error in the prosecutor's argument.

### Inflame passions

 Finally, appellant argues that the prosecutor inflamed the passions of the jury by stating that M.F. was a virgin until appellant sexually assaulted her. Appellant contends that the prosecutor made approximately nine improper comments, but defense counsel objected to only two comments at trial. A "prosecutor must avoid inflaming the jury's passions and prejudices against the defendant." *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995); *State v. Mayhorn*, 720 N.W.2d 776, 786–87 (Minn.2006) (stating prosecutor must not appeal to passions of jury). Inflaming the jury's passions and prejudices is a larger concern where credibility is a central issue. *Porter*, 526 N.W.2d at 363. But "[p]rosecutors are permitted to make reasonable inferences from evidence on the record, to analyze or explain the evidence, and to make legitimate arguments to the jury based on the evidence." *State v. Rucker*, 752 N.W.2d, 538, 552 (Minn.App. 2008), *review denied* (Minn. Sept. 23, 2008). We look at the closing argument as

a whole when considering claims of prosecutorial misconduct. *Daniels*, 332 N.W.2d at 180.

In *State v. McNeil*, the prosecutor made the following statement in closing argument in a criminal-sexual-conduct case:

[T.L.M.], this means that you're not a virgin anymore. Her first sexual experience, not as an adult, not on her wedding night, not in college, not even in high school. As an eight year old, as a nine year old, as a ten year old. You can't take away the burden that [T.L.M.] will carry with her the rest of her life. You can't give her back her childhood. You can't give her back her virginity. But you can give her justice.

658 N.W.2d 228, 234–35 (Minn.App.2003). This court held that these comments were improper because they "were wholly unrelated to the elements of the offenses with which [the] appellant was charged or the evidence at trial." *Id.* at 235. This court affirmed McNeil's conviction, however, because even though it was improper for the prosecutor to evoke sympathy for the victim, the misconduct, even when considered with other errors that occurred, was not unduly prejudicial. *Id.* at 236.

 Here, the prosecutor stated that M.F. was a "14–year–old girl, stripped of her innocence ... she was a virgin at the time"; she "didn't get to choose to have it with someone of her choosing"; she was "hiding this disgusting act"; "she's a 14–year–old girl that just had [her] first sexual experience"; "we're talking about a 14–year–old girl here with a first intimate act of embarrassment, of shyness, of newness, not knowing what to do about it"; she "didn't know how everybody would react, what would they think and how would you know if you're 14 years old and never been through this situation"; and "a 14–year–old girl was assaulted and taken away from being able to choose." Appellant's attorney challenged M.F.'s credibility and

questioned why it took M.F. a weekend to report the assault. And the prosecutor was explaining the evidence—why M.F. did not immediately report the sexual assault. Thus, this is a case in which the prosecutor was explaining evidence, rather than evoking sympathy and commenting on issues wholly unrelated to the elements of the offenses or the evidence at trial. *See Rucker*, 752 N.W.2d at 552 (stating that prosecutors are permitted to explain the evidence); *cf. McNeil*, 658 N.W.2d at 235 (stating that prosecutors are not permitted to evoke sympathy by commenting on issues unrelated to the evidence). Based on this explanation and the fact that the prosecutor's closing argument was over 28 transcribed pages, the comments occurred approximately nine times, and appellant objected to only two of the com-

ments, the district court did not abuse its discretion in denying appellant postconviction relief.

## DECISION

Because the record supports the finding that appellant voluntarily and without justification absented himself from trial by attempting suicide, he waived his right to be present at every stage of his trial. And because the prosecutor did not commit prejudicial misconduct in closing argument, the district court did not abuse its discretion in denying appellant's petition for postconviction relief.

**Affirmed.**