# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1774

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of Nebraska. |
| | * | |
| Juan P. Silva, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: December 15, 2010
Filed: January 25, 2011

_____

Before WOLLMAN, MURPHY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Juan Silva pled guilty to conspiracy to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 846, and the district court[1] sentenced him to 151 months imprisonment. Silva appeals his sentence, arguing that the court erred in applying a two level sentencing enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2. We affirm.

_____

[1] The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

On November 19, 2008, police officers in Omaha, Nebraska arrested Sean Thompson for distributing methamphetamine. Thompson agreed to cooperate with the police and told the officers that Juan Silva was one of his sources. He arranged to buy a large quantity of methamphetamine from Silva that same day at the Comfort Inn Motel in Omaha. Some officers waited in a motel room with Thompson while others were stationed outside in the parking lot. Thompson had asked Silva to meet him in his motel room, but Silva refused to go inside after he arrived. Instead he kept driving his truck around the parking lot and asked Thompson to meet him outside.

The police decided to stop Silva in the parking lot. Officer Jeff Hunter was in an unmarked minivan with officers Tony Foster and Paul Milone. Officer Edith Andersen was driving an unmarked SUV in which officer Greg Carrico was a passenger. When instructions were given to stop Silva, Hunter pulled his minivan in front of the suspect's truck. Hunter got out of his van and yelled, "Police, show me your hands." Although Hunter was dressed in plain clothes, he was wearing a reflective police badge on his collar. Milone and Foster followed right after Hunter; they were both wearing police raid gear, including tactical vests with police insignia or lettering on the front and back. In addition, Milone wore a hat marked "Police". Hunter and Milone approached Silva with their guns drawn.

Silva initially stopped, but he began to back up as officer Andersen attempted to position her SUV to box in his truck. The two vehicles collided, and Andersen was injured and unable to open her car door. Hunter was only four to five feet from Silva's side window when the collision occurred, and he again yelled, "Police, show me your hands." Silva looked at Hunter, then "scrunched down, threw the vehicle in drive and sped away towards Officer Carrico." Carrico fired two shots at Silva's vehicle as he drove and escaped across a roadway. He turned himself in three days later.

Silva was charged with and pled guilty to conspiracy to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 846. A presentence

investigation report (PSR) was prepared, which recommended that Silva receive a two level sentencing enhancement for reckless endangerment during flight under § 3C1.2. Silva objected to the reckless endangerment enhancement, contending that he had not realized that the people who attempted to stop him in the motel parking lot were police officers.

At sentencing the district court heard testimony from Officers Hunter and Andersen and viewed several photographs taken from a motel surveillance video before concluding that the government had satisfied its burden in respect to the § 3C1.2 enhancement. The court applied the two level enhancement for a total offense level of 33, which with a criminal history category of II resulted in a guideline range of 151 to 188 months. Silva was then sentenced to 151 months and five years supervised release.

On appeal, Silva challenges only the court's application of the reckless endangerment enhancement. Section 3C1.2 provides that a defendant's offense level should be increased by two levels if "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."

Silva first argues that the district court failed to make adequate findings in support of its decision as required by Federal Rule of Criminal Procedure 32(i)(3)(B). Rule 32(i)(3)(B) provides that at sentencing, a district court "must–for any disputed portion of the presentence report or other controverted matter–rule on the dispute or determine that a ruling is unnecessary." At Silva's sentencing the district court reviewed surveillance photographs and heard testimony about his flight and officer Andersen's injuries. The court credited the testimony of the officers and rejected Silva's contention that he had been unaware that the people who stopped him were police officers. The court concluded that the government had satisfied its

preponderance of the evidence burden. These findings were sufficient under Rule 32(i)(3)(B).

Silva also argues that the district court erred in applying the § 3C1.2 enhancement because there was not sufficient evidence for the court to find that he knew he was fleeing from law enforcement officers. "We review for clear error a district court's findings with respect to reckless endangerment during flight." United States v. Bazaldua, 506 F.3d 671, 674 (8th Cir. 2007). When the court's findings "are based on the credibility of witnesses, they are virtually unreviewable." United States v. Moore, 242 F.3d 1080, 1081 (8th Cir. 2001).

Silva concedes that he went to the motel to sell methamphetamine. The officer testimony, found credible by the district court, related how Hunter had identified his group as police at least twice after blocking Silva's vehicle in the motel parking lot. Silva was also instructed to get out of his truck by Hunter who was within four to five feet and wearing a police badge on his shirt. Two of the other officers who approached Silva's truck were wearing police raid gear with police insignia on the front and back, and one was wearing a cap that read "Police". Silva nevertheless fled from the officers and injured Andersen in the process.

The district court found from the evidence that "Mr. Silva, or anyone in Mr. Silva's situation, would have reason to suspect that these were law enforcement officers coming to arrest him." We conclude that the court's findings were not clearly erroneous, and the evidence was sufficient to support its application of the § 3C1.2 enhancement for reckless endangerment during flight. See Moore, 242 F.3d at 1082.

Accordingly, we affirm the judgment of the district court.

_____