# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2962

_____

United States of America,

*Plaintiff - Appellee,*

v.

Tony Eugene Wardlow,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 14, 2016
Filed: July 29, 2016

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and MOODY,[1] District
Judge.

_____

MOODY, District Judge.

A jury convicted Defendant Tony Eugene Wardlow of transportation of a minor
for prostitution, a violation of 18 U.S.C. §2423(a). The district court sentenced him

_____

[1]The Honorable James M. Moody, Jr, United States District Judge for the
Eastern District of Arkansas, sitting by designation.

to 250 months' imprisonment. Wardlow appeals from his conviction and sentence, specifically challenging two of the district court's[2] evidentiary rulings during trial and the court's application of the United States Sentencing Guidelines at sentencing. We have jurisdiction over this appeal pursuant to 28 U.S.C. §1291. We affirm.

I.

At trial, the minor ("A.R.") testified that in August of 2011 she met Wardlow on Independence Avenue in Kansas City, Missouri, where she worked as a prostitute. She was sixteen years old at the time. The Defendant became a "regular" client, meaning that she engaged in sex with him in exchange for money two to three times per week. She testified that having a "regular" provided a more stable income for her than soliciting "tricks" on Independence Avenue. She testified that she would give a "regular" more time and attention, but would not form an emotional attachment to them. A.R. testified that Wardlow was sometimes nice but other times he would "say things, inhumane things, place ideas into my head of fear, make me in fear, degrade me, a lot of things like that." (Trial Tr. vol.1, 23). A.R. stated that Wardlow would pick her up and drive her to places in Missouri where "it's very common for girls to end up dead there," and he would tell her that was where she would end up. Wardlow told her that she was "just a black prostitute, that nobody would come and look for [her]." *Id.* A.R. explained that Wardlow provided her with a mobile phone so that he could contact her. When asked whether anyone else knew the phone number, A.R. stated that she gave the phone number to someone else "because at that time I was in fear that I wasn't going to make it through anything, so I really just wanted somebody to have a number to get ahold [sic] of me like if there was no more contact between me and my family." (Trial Tr. vol. 1, 24).

---

[2] The Honorable Dean Whipple, United States Senior District Judge for the Western District of Missouri.

A.R. testified that Wardlow, an over-the-road truck driver, took her along on certain trips for the purpose of having sex with him and his friends. On one occasion, the Defendant, A.R., and his friend, Tom Farrell, took a trip to St. Louis. A.R. testified that she had sex with both men during the trip and was paid for the sex. This testimony was corroborated by the government's witness, Tom Farrell. A.R. testified that she was always paid in cash because she had to pay her pimp in cash but frequently the Defendant would supplement the cash with payment in kind. These payments were given in the form of food, clothing, and drugs. Wardlow took A.R. to Texas on another long-haul trip in late September of 2011. Again, Tom Farrell traveled with them and testified that the Defendant brought A.R. along to have sex with both men. A.R. testified that she had sex with Tom and Tony on this trip. Farrell and A.R. both testified that Wardlow's plan was to set A.R. up in an apartment in St. Joe, Missouri, so that she would be available to Wardlow and his friends at any time.

## II.

In a pretrial motion in limine, the Government argued that any reference to A.R.'s sexual behavior after the time of the offense, specifically evidence of A.R.'s prostitution activity with a man named Otis Warren, should be precluded. Mr. Warren had also been charged and pled guilty to transporting A.R. for the purpose of prostitution in 2011. The Government argued that the evidence was inadmissible under Rule 412 of the Federal Rules of Evidence which precludes introduction of evidence of a victim's sexual behavior in a criminal sex offense case with specific exceptions.

The Government also argued that the evidence regarding Otis Warren was irrelevant, prejudicial, and likely confusing to the jury. *See* Fed. R. Evid. 403. The district court granted the Government's motion in limine and precluded evidence of A.R.'s prostitution activity with Otis Warren.

Wardlow argued at trial that he lacked the intent required to prove the trafficking of a minor charge against him because he considered A.R. to be his girlfriend. Wardlow attempted to cross-exam A.R. about her testimony that she would not develop an emotional attachment to a client. Wardlow proffered his line of questioning based upon a personal journal entry in which A.R. had stated that she had established a boyfriend-girlfriend relationship with Warren after her relationship with Wardlow ended. The district court affirmed its previous ruling and denied the proffer. Wardlow contends the district court abused its discretion when it limited his cross-examination of A.R. into this issue, violating his Sixth Amendment right to confront the witnesses against him.

Rule 412 excludes any "evidence offered to prove that a victim engaged in other sexual behavior" or "evidence offered to prove a victim's sexual predisposition" from a civil or criminal proceeding involving alleged sexual misconduct.[3] FED. R. EVID. 412. Clearly, testimony elicited from A.R. about her prostitution activity with Otis Warren would fall under the prohibition of Rule 412. Wardlow's Sixth Amendment right to confront a witness does not extend to any and all questions he intends to ask. "A restriction on an accused's right to introduce evidence may not be arbitrary or disproportionate to the purpose that the restriction is designed to serve. . . ." *United States v. Papakee,* 573 F.3d 569, 573 (8th Cir. 2009) (citing *Michigan v. Lucas,* 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L.Ed. 2d 205 (1991)). The purpose of the Rule 412 restriction is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." FED. R. EVID. 412 advisory committee's note to 1994 amendment. This purpose outweighs Wardlow's right to produce testimony showing

---

[3] Rule 412 also requires a party to file a notice of intent to offer Rule 412 evidence at least 14 days before trial. Wardlow failed to file a notice.

that the victim had an emotional relationship with a different client. Wardlow's Sixth Amendment right was not violated by the exclusion of this evidence.

In addition, the proffered line of questioning by Wardlow was irrelevant. Wardlow sought to prove that he believed A.R. was his girlfriend. The question which he proffered regarding A.R.'s feelings for Mr. Warren did not tend to prove Wardlow's state of mind, but rather A.R.'s state of mind. In other words, the testimony would be used to show that A.R. likely consented to the transportation for sex.

> The consent or willing participation of [a minor] is insignificant and hardly relevant. "[W]hen sexual assaults are committed upon children . . . , consent is not a defense. The reason is that the victims in these cases, because of ignorance or deceit, do not understand what is happening to them. Therefore their 'consent' is of no significance.

*United States v. Abad*, 350 F.3d 793, 798 (8th Cir. 2003) (quoting *Guarro v. United States,* 237 F.2d 578, 581 (D.C.Cir.1956)). *See also Gebardi v. United States,* 287 U.S. 112, 119, 53 S.Ct. 35, 37, 77 L.Ed. 206 (1932) (The "statute is drawn to include those cases in which the woman consents to her own transportation.").

A trial, the Government called Detective Derrick Wilczek as a witness. Wilczek is an officer with the FBI's Child Exploitation Task Force and was involved with the investigation of the Defendant. Wilczek conducted a recorded interview of Wardlow on the day a search was conducted at Wardlow's home. During Wilczek's direct examination, the Government played short audio clips of the interview, including transcription, and stopped to ask Wilczek questions about that particular clip. After playing the first audio clip, the following exchange occurred:

Government:      . . . [H]ow does [Wardlow] refer to [A.R.] in this?

Wilczek:        As a "streetwalker from the Avenue."

Government:        Does he use variations about kind of the way he referred to her? What other sorts of terms does he use to refer to her during the course of this interview?

Wilczek:          At times he calls her a whore, a lying bitch.

(Trial Tr. vol 1, 191).

At the conclusion of Wilczek's direct testimony and outside the presence of the jury,  the Defendant asked the district court whether he would be allowed to cross-examine Wilzcek about Wardlow's characterization of the victim. The defense argued that the Government had opened the door to this line of questioning when the witness testified that Wardlow called A.R. a "lying bitch." The district court affirmed its pre-trial order in which the court precluded any evidence relating to a mistake of fact defense based on Wardlow's mistaken belief that A.R. was eighteen years old. In response to the Government's motion in limine, the Defendant had argued that A.R. was a critical and essential witness for the Government and the Defendant should be allowed to inquire as to her reputation for truthfulness. The Defendant conceded that there was no mistake of fact defense available to him. The court had reasoned that whether A.R. lied about her age was irrelevant to the issues to be proven at trial. Citing Rule 403 of the Federal Rules of Evidence, the court ruled that the information would confuse the jury regarding a mistake of fact defense. At trial, the court ruled that the Defendant could not cross examine Detective Wilczek regarding Wardlow's characterization of the victim as a "lying bitch" because it related to his belief that she lied about her age. We agree.

Rule 403 provides:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED. R. EVID. 403. "Rule 403 'contemplates a flexible scheme of discretionary judgments by trial courts designed to minimize the evidentiary costs of protecting parties from undue prejudice.'" *United States v. Dennis*, 625 F.2d 782, 796 (8th Cir. 1980) (quoting *United States v. Jackson*, 405 F.Supp. 938, 945 (E.D.N.Y. 1975)). "In determining whether evidence should have been excluded under Rule 403, a reviewing court must give great deference to the trial judge who saw and heard the evidence." *United States v. Ziesman*, 409 F.3d 941, 951 (8th Cir. 2005) (quoting *United States v. Cody*, 114 F.3d 772, 777 (8th Cir.1997)). "District courts are given broad discretion in gauging the possibility of unfair prejudice under Rule 403, and we will reverse only if a district court abuses this discretion." *United States v. Medicine Horn*, 447 F.3d 620, 622 (8th Cir. 2006) (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir.2005), cert. denied, 546 U.S. 1175, 126 S.Ct. 1343, 164 L.Ed.2d 57 (2006)).

We find that the district court did not abuse its discretion. Evidence of Wardlow's characterization, or name calling, of the victim has very little, if any, probative value to an issue in the case. When compared to the potential confusion to the jury of the issues and available defenses, any probative value the evidence may have had is substantially outweighed by a danger of unfair prejudice. Fed. R.Evid. 403. *See also United States v. Bordeaux*, 400 F.3d 548, 558 (8th Cir. 2005) ("In light of the minimal probative value of the evidence and the important purpose of the exclusion, then, exclusion of the statement was not disproportionate to the purpose behind the exclusion.").

Wardlow appeals the district court's application of United States Sentencing Guidelines ("U.S.S.G.") §§ 2A3.1(a)(2) and 2A3.1(b)(1) at sentencing. On appeal, "[w]e review for clear error the district court's findings of fact and apply *de novo*

review to the district court's interpretation and application of the Guidelines." *United States v. Wood,* 670 F.3d 883, 886 (8th Cir. 2012) (quoting *United States v. Spikes*, 543 F.3d 1021, 1023 (8th Cir. 2008)). We "must first ensure that the district court committed no significant procedural error." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009)(quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007)). "A failure to properly calculate the advisory Guidelines range is a significant procedural error, and a non-harmless error in calculating the guidelines range requires a remand for resentencing." *Spikes*, 543 F.3d 1021, 1023 (8th Cir. 2008) (internal quotation marks and citation omitted).

Under U.S.S.G. §2G1.3(a)(3), a defendant sentenced for a crime under 18 U.S.C. § 2423(a), travel to engage in prohibited sexual conduct with a minor, has a base offense level of 28. However, §2G1.3(c) instructs the district court that if the offense involved conduct described in 18 U.S.C. §§ 2241 or 2242 it is appropriate to look to the base offense level applicable under U.S.S.G. §2A3.1. If the base offense level in §2A3.1 is greater than the base offense level in §2G1.3, the district court should apply the greater base offense level of the two Guideline sections. In Wardlow's case, the base offense level under §2A3.1 was two levels greater than the base offense level stated under §2G1.3. Therefore, the Court used the greater of the two levels to determine Wardlow's base offense level was 30.

Wardlow argues that §2A3.1 did not apply in his case because the offense did not involve conduct described under 18 U.S.C. §§ 2241 or 2242. The Commentary to U.S.S.G. §2G1.3 explains:

Conduct described in 18 U.S.C. § 2241(a) or (b) is engaging in, or causing another person to engage in, a sexual act with another person: (I) using force against the minor; (II) threatening or placing the minor in fear that any person will be subject to death, serious bodily injury, or kidnapping; (III) rendering the minor unconscious; or (IV) administering

by force or threat of force, or without the knowledge or permission of the minor, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the minor to appraise or control conduct. . . .

U.S. SENTENCING GUIDELINES MANUAL § 2G1.3 cmt. n.5(B)(i) (U.S. SENTENCING COMM'N 2014). *See also* 18 U.S.C. §2241(a). At sentencing, the district court found that there was sufficient evidence that Wardlow used threats against A.R. to cause her to have sex with him.

In light of A.R.'s testimony that Wardlow drove her to areas of town where girls were often found dead and tell her she would be there and that he "place[d] ideas into [her] head of fear," we conclude that the court did not clearly err in finding that Wardlow's offense of conviction involved conduct described in 18 U.S.C. §2241(a). Under the Guidelines, Wardlow's appropriate base offense level was 30. Because U.S.S.G. §2A3.1(b)(1) prescribes a four-level enhancement for an offense that involved conduct described in 18 U.S.C. §2241(a), the enhancement was also appropriate.

Wardlow contends that the district court erred in applying the five-level enhancement under U.S.S.G. §4B1.5(b) for engaging in a "pattern of activity involving prohibited sexual conduct." U.S. SENTENCING GUIDELINES MANUAL § 4B1.5(b) (U.S. SENTENCING COMM'N 2014). Wardlow argues that there was insufficient evidence for the district court to conclude that Wardlow engaged in a pattern of prohibited sexual activity.

Section 4B1.5(b) of the U.S.S.G. applies to "any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct." *Id.* The application notes to the subsection clarify that it applies where the defendant has engaged in a 'pattern'

of prohibited sexual conduct with a minor "on at least two separate occasions." U.S. SENTENCING GUIDELINES MANUAL §4B1.5, app. n.4(B)(i). "An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." U.S. SENTENCING GUIDELINES MANUAL §4B1.5, app. n.4(B)(ii).

Wardlow does not dispute that his conviction for transporting a minor for prostitution is a covered sex crime and there is ample evidence in the record that Wardlow had sex with A.R. on more than two separate occasions. However, Wardlow argues that the sexual activity that occurred between Wardlow and A.R. within the State of Missouri did not meet the definition of prohibited sexual conduct for purposes of §4B1.5(b) because having sexual contact with a seventeen year old is not a crime in Missouri. He contends that if the sexual activity in Missouri did not count as prohibited sexual contact for purposes of §4B1.5(b), then there was insufficient evidence that Wardlow had prohibited sexual contact with A.R. on two occasions. It is true that in the State of Missouri consensual sex with a seventeen year old is not prohibited by statute.

The district court ruled that there was sufficient evidence of a pattern of sexual activity between Wardlow and A.R. outside Missouri to support the application of § 4B1.5(b). There was testimony from A.R. and from Tom Farrell that Wardlow had sex with A.R. on this trip. The trip lasted three days with stops in both Fort Worth and Big Springs. Even assuming that sexual activity with A.R. after she turned seventeen years old was not prohibited in Missouri, these facts support the application of § 4B1.5(b) enhancement for a pattern of prohibited sexual conduct with a minor. We find no clear error in the district court's findings of fact and no procedural error in calculating the advisory Guidelines sentencing range. The sentence is affirmed.

III.    CONCLUSION

For these reasons, we affirm the district court's rulings, and uphold Wardlow's conviction and 250 month sentence. The motion to seal filed by the United States on March, 31, 2016 is granted.

_____