# United States Court of Appeals
### For the Eighth Circuit
_____

No. 24-1635
_____

United States of America

*Plaintiff - Appellee*

v.

Shaquan Coffer

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: March 20, 2025
Filed: September 17, 2025
_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Shaquan Coffer pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Over Coffer's objection, the district court applied a two-level upward adjustment to his advisory Sentencing Guidelines range for recklessly creating a substantial risk of death or bodily injury to another person while fleeing law enforcement. See U.S.S.G. § 3C1.2. Because the district court's findings and evidence in the record do not support application of

the enhancement, Coffer has demonstrated procedural error. Since the district court indicated it might impose a different sentence if an appellate court determined it erred in finding the enhancement applied, we vacate Coffer's sentence and remand for resentencing.

## I.    BACKGROUND

At approximately 1:00 a.m. on April 2, 2023, Cedar Falls Police Officers responded to a 911 call placed by Coffer's girlfriend. She reported that Coffer had kicked her windshield while sitting in her car, ultimately cracking it. Officers located the car, conducted a traffic stop, and smelled alcohol and marijuana inside the car. After separating the two, Coffer's girlfriend told the responding officers that Coffer was "super drunk" and armed with a firearm.

As Coffer was standing outside the vehicle speaking to an officer, the officer observed Coffer attempting to conceal something in the front of his waistband. When the officer initiated a pat-down search, Coffer fled on foot into the city center area of downtown Cedar Falls. Streetlights illuminated the area. During the chase, officers saw Coffer reach into the front of his pants and then heard what sounded like metal hitting concrete. Eleven seconds later, officers retrieved a Glock Model 48 that had been painted white on the driveway of a tax business. The gun was loaded with a 19-round capacity magazine, but no round was in the chamber. Another officer responding in a patrol car was able to detain Coffer after he ran into an area that was fenced.

The Presentence Investigation Report ("PSIR") prepared following Coffer's guilty plea did not include an upward adjustment pursuant to U.S.S.G. § 3C1.2. The prosecutor objected, arguing the enhancement applied, as Coffer had "discarded a loaded firearm as he fled in a populated area, creating the risk that the firearm could accidentally discharge." The PSIR writer noted the prosecutor's objection, stated, in her opinion, it appeared the risk created by Coffer's conduct was not of such a nature and degree to amount to a gross deviation from the standard of care that a

-2-

reasonable person would exercise in the situation, and left resolution of this question to the court.

Prior to sentencing, both parties submitted sentencing memoranda with their arguments as to the applicability of § 3C1.2. At sentencing, the district court received several exhibits from each party, including body camera footage of the chase and information specific to the Glock's "revolutionary SAFE ACTION® System." The prosecutor argued that § 3C1.2 applied because "common sense" tells a person that loaded firearms are dangerous and discarding a firearm with 19 rounds of ammunition while running from the police in an area where it could be found by any member of the public, including a child, is dangerous and amounts to a gross deviation from the standard of care that a reasonable person would exercise. Coffer opposed application of the enhancement for several reasons, including: (1) as depicted by the body camera footage, the area was not populated at the time; (2) the gun was not discarded in a residential area or nearby a school or playground thereby lessening the risk a child would find the gun first; (3) there was no attempt to conceal the gun when it was discarded; (4) the gun was on the ground for 11 seconds before officers recovered it; (5) there was no risk of accidental discharge due to the gun's specific safety-design features; and (6) a round was not chambered.

The district court considered applicability of § 3C1.2 a close question in this case. The district court noted in situations involving only the discard of a firearm, without other aggravating factors such as discharge of the gun, struggling with law enforcement, etc., the cases typically focus on two factors: (1) the risk of accidental discharge, and (2) the risk to the community if a member of the public finds the firearm before law enforcement. The district court expressly found the first basis inapplicable in this case based on the design of the firearm, which made accidental discharge "highly unlikely." In applying the enhancement, the court relied on the second basis, stating that "discarding a firearm in public, wherever it is, creates, in my view, a substantial risk of harm." The court also noted the unique attributes of Coffer's gun that made it look more like a toy and be attractive to children—painted white with a gold cross sticker on it. The court concluded, "Nobody acting

reasonable in this society would discard a loaded handgun in a public setting. . . . And so I find under these circumstances that when an offender discards a firearm in a public location and it's loaded, that that does create a substantial risk of death or serious bodily injury to others."

With the enhancement, Coffer's total offense level increased from 19 to 21, yielding an advisory Sentencing Guideline range of 57 to 71 months. The district court denied the prosecutor's request for an upward departure or variance and denied Coffer's request for a downward variance, ultimately imposing a sentence of 71 months' imprisonment. The district court explained that a sentence at the high end of the range was appropriate due to danger to the community and high likelihood of recidivism. On the other hand, the court noted that it "might sentence [Coffer] to a lower sentence if the Eighth Circuit finds that I was incorrect in finding that the discarding of a loaded handgun is sufficient for that enhancement."

## II.    DISCUSSION

Section 3C1.2 of the United States Sentencing Guidelines provides that a defendant's offense level should be increased by two levels "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." The commentary in note 2 to § 3C1.2 states that the term "reckless" is defined in the commentary to § 2A1.4. The commentary to § 2A1.4 defines "reckless" to mean "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 cmt. n.1.

The burden rests with the government to prove by a preponderance of the evidence each of the facts necessary to establish a sentencing enhancement. United States v. Campos, 79 F.4th 903, 908 (8th Cir. 2023). We review a district court's findings with respect to reckless endangerment during flight for clear error. United

States v. Henry, 132 F.4th 1063, 1064 (8th Cir. 2025). Under clear error review, reversal is warranted "only when the entire record definitely and firmly illustrates that the lower court made a mistake." United States v. Masood, 133 F.4th 799, 808 (8th Cir. 2025) (quoting United States v. Bradley, 127 F.4th 1127, 1132 (8th Cir. 2025)). We apply *de novo* review to the district court's construction and application of the Sentencing Guidelines. Id. at 806. Miscalculating the applicable Sentencing Guideline range is a procedural error. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

None of the underlying facts regarding the condition of the firearm, when it was discarded, or where it was recovered by law enforcement are in dispute in this case. The dispute centers on whether the risk posed by Coffer's conduct created a substantial risk of serious bodily injury or death and amounts to a gross deviation from the standard of care a reasonable person in the situation would exercise. Coffer asserts the district court improperly increased his Sentencing Guideline range when it interpreted § 3C1.2 to mean any time an offender drops a firearm while fleeing law enforcement, regardless of other circumstances, he recklessly creates a substantial risk of death or serious bodily injury. In the government's view, the district court properly applied the enhancement when it relied on the following facts: the firearm was loaded, it was discarded in a public place where someone might happen upon it, and its unique appearance made it especially attractive to children.

While other circuits have determined that discarding a firearm while fleeing law enforcement alone is insufficient to support application of § 3C1.2, this Court has not resolved that issue. Henry, 132 F.4th at 1064–65 (collecting cases and declining to resolve the question due to the existence of other facts in the record supporting application of the enhancement). In analyzing U.S.S.G. § 3C1.2, the Fourth Circuit found that to comport with the plain language of the guideline, the facts must show "something more" than merely throwing a loaded firearm while fleeing law enforcement. United States v. Shivers, 56 F.4th 320, 325–26 (4th Cir. 2022). The Tenth Circuit has reached the same conclusion. United States v. Zamora, 97 F.4th 1202, 1212 & n.8 (10th Cir. 2024) (noting the court has "long assumed" the

facts must show something more than mere instinctive armed flight). We find these cases persuasive.

To warrant application of § 3C1.2, evidence supporting a substantial risk of death or serious bodily injury to another person must be more than speculative. See Shivers, 56 F.4th at 326 (determining that the government failed to meet its burden when the gun was discarded in view of a police officer within an established perimeter, there was no evidence the gun could have gone unnoticed by the officer, and there was no evidence of bystanders in the area who could have picked up the gun); United States v. Mukes, 980 F.3d 526, 538 (6th Cir. 2020) (concluding the record was inadequate to support the government's theory that running from the discarded firearm created a substantial risk of harm when there was no evidence of any potential risk that a bystander might have come across the weapon during the brief 2:00 a.m. encounter between the defendant and law enforcement).

Here, Coffer's girlfriend informed responding officers that Coffer was armed. An officer observed Coffer attempting to conceal something in the front of his pants before he began to run. While running, there was enough illumination for officers to see Coffer reach in the front of his pants. That observation was followed by the sound of a metallic object hitting the pavement. Pursuing officers recovered the white gun 11 seconds after Coffer discarded it. Coffer points out that when this incident took place at 1:00 a.m., the officers' body camera footage does not depict the presence of others in the area. The government did not present evidence to rebut this claim. In addition, given the evidence in the record regarding the gun's unique safety features, neither the district court nor the government relied on accidental discharge as a basis for applying the enhancement.

This case is unusual due to the evidence in the record and the court's finding that accidental discharge of the firearm was not at issue. It is also unusual in that there is a lack of evidence in the record showing "something more" than the mere discard of a loaded gun. The district court erred when it determined that § 3C1.2 applies anytime a defendant discards a loaded firearm in public while fleeing law

enforcement. "The Sentencing Commission promulgated § 3C1.2 in order to adopt the view that mere flight from arrest was not sufficient for an adjustment, but that flight plus endangerment was enough." United States v. Brown, 31 F.4th 39, 46 (1st Cir. 2022) (internal quotation and citation omitted). As this Circuit's cases and others indicate, possession of a loaded firearm may be sufficient to establish endangerment for purposes of § 3C1.2 if there are sufficient facts to show the defendant's conduct created a substantial risk—not a speculative risk—of death or serious bodily injury to others. The government's reliance on the possibility a member of the public could have found the gun (but did not establish the presence of bystanders) and characteristics of the gun that might make it more attractive to a child is inadequate, as these facts demonstrate only a hypothetical or speculative risk. The government did not satisfy its burden of showing another person was placed at substantial risk of death or serious bodily injury when Coffer discarded his gun while being pursued by law enforcement. The district court erred when it found § 3C1.2 applied.

## III.   CONCLUSION

The district court miscalculated Coffer's advisory Sentencing Guideline range. Because the court indicated it might sentence Coffer differently if § 3C1.2 did not apply, the error is not harmless. See United States v. Wardlow, 830 F.3d 817, 822 (8th Cir. 2016) (noting remand is required if there is a non-harmless error in the Sentencing Guidelines calculation). We vacate Coffer's sentence and remand for resentencing.

COLLOTON, Chief Judge, dissenting.

Under the correct standard of appellate review, I would affirm the judgment. Whether the defendant's reckless act of discarding a loaded firearm in a public area created a substantial risk of serious injury to others under USSG § 3C1.2 is a question of fact. A district court's finding of substantial risk is reviewed only for clear error. *United States v. Williams*, 30 F.4th 796, 799 (8th Cir. 2022); *United*

-7-

*States v. Balzaldua*, 506 F.3d 671, 675 (8th Cir. 2007). Therefore, a court of appeals may not reverse unless the record "definitely and firmly illustrates" that the district court made a mistake. *United States v. Marshall*, 411 F.3d 891, 894 (8th Cir. 2005).

After recounting that Coffer discarded a loaded gun while fleeing police at night in a public setting, the district court found that "under these circumstances," the defendant's reckless act created a substantial risk of death or serious bodily injury to others. Although officers recovered the gun, the court found it "lucky" that "the police officers did find it, did hear it hit the ground, did note to look for a firearm, but many of those things could have gone the other way." The court found that Coffer did not make an effort to surrender the gun safely or intentionally discard the gun in a lighted area so that police could find it. Rather, the court found that Coffer "was struggling to get the gun out of his pants and finally threw it when he finally got it out of his pants." Implicit in the district court's ruling is the suggestion that if Coffer *had* intentionally facilitated recovery of the weapon by police, then the adjustment based on substantial risk to others may well have been inapplicable. The district court's ruling was tied to the facts of this case, and the court unfairly attributes to the district court a blanket determination "that § 3C1.2 applies anytime a defendant discards a loaded firearm in public while fleeing law enforcement." *Ante*, at 6-7.

On these facts, the district court did not clearly err in finding that Coffer's reckless act created a substantial risk of death or serious bodily injury to others. When Coffer discarded the loaded gun, there was no guarantee that police would recover it promptly. This is not a situation like that in *United States v. Shivers*, 56 F.3d 320 (4th Cir. 2022), where the defendant discarded a gun "in view of a police officer within an established perimeter," so that no reasonable factfinder could have inferred a substantial risk to others. *Id*. at 326. Coffer discarded his gun in an unrestricted public area, and it was serendipitous that police recovered the weapon immediately. The incident occurred at the end of a Saturday night in downtown Cedar Falls. It was not unreasonable to infer a substantial risk that a passerby could

have happened upon the loaded gun if police continued to chase Coffer without seizing the weapon.

The court's conclusion to the contrary appears to rest on its overstatement of the district court's ruling and two more analytical errors. First, the court fails to apply the "clear error" standard of review dictated by our precedent. Determining only that the district court "erred" under de novo review, the court substitutes its own appellate finding of insubstantial risk for the district court's assessment.

Second, the court purports to adopt a legal standard from other circuits but mischaracterizes the cited decisions. As the court would have it, the sentencing guidelines require the government to prove "something more" than a defendant's discard of a loaded weapon in a public area in order to show a substantial risk of death or serious bodily injury to others. But the cited authorities say something quite different.

Some courts have said that the government must show "something more" than *instinctive armed flight* to establish reckless endangerment under USSG § 3C1.2. *See Shivers*, 56 F.4th at 326 ("[W]e have required 'something more' than mere instinctive armed flight."); *United States v. Zamora*, 97 F.4th 1202, 1210 (10th Cir. 2024) (explaining that *Shivers* "held what we have long assumed—that the facts must show 'something more' than mere instinctive armed flight to support § 3C1.2.") (internal quotation omitted); *cf. United States v. Henry*, 132 F.4th 1063, 1064 (8th Cir. 2025) ("This court has not decided whether possessing a firearm during flight is *alone* sufficient to support the § 3C1.2 enhancement."). But of course this case involved more than instinctive armed flight: the defendant, while fleeing, jettisoned the firearm in a public area. The question is not whether there is "something more," but whether the circumstances surrounding Coffer's discard of the loaded firearm support a finding of substantial risk to others.

For the reasons discussed, under the circumstances here, the district court did not clearly err in finding that Coffer's reckless act of discarding a loaded firearm in

a public area created a substantial risk of death or serious injury to others.  I would therefore affirm the judgment.

_____