# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3748

_____

United States of America,                    *
                                              *
            Plaintiff - Appellee,             *
                                              *    Appeal from the United States
v.                                            *    District Court for the
                                              *    Western District of Missouri.
Phillip D. Hill,                              *
                                              *
            Defendant - Appellant.            *

_____

Submitted: September 25, 2009
Filed: October 22, 2009

_____

Before MELLOY, GRUENDER, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Following a plea of guilty, Phillip D. Hill was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Hill to 78 months' imprisonment. Hill appeals his sentence, arguing that the district court improperly applied enhancements under the U.S. Sentencing Guidelines ("USSG") §§ 2K2.1(b)(6) and 3A1.2(c). We affirm.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

I.

In the early morning hours of February 2, 2008, Hill was a passenger in a black Pontiac Grand Am traveling on Interstate 70 in Kansas City, Missouri, at a high rate of speed and without its lights on. Two police officers patrolling the interstate in a police car observed the Grand Am and recognized it as matching the description of a vehicle that had refused to stop for another police officer earlier that night. The officers began driving in the Grand Am's general direction and observed that the Grand Am had been involved in a one-car accident.

The driver of the car and Hill fled from the wrecked car in different directions. Kansas City Police Officer Mark Smith exited the police car and yelled at Hill to stop, but Hill continued running. Officer Smith pursued Hill up several embankments on the side of the interstate. During the chase, Hill turned toward Officer Smith at least three times, squared his body, and unsuccessfully attempted to draw an object from his waistband. Officer Smith could not discern what was in Hill's waistband, but each time that Hill turned around and attempted to retrieve something from his waistband, Officer Smith "drew down" on his firearm and verbally ordered Hill onto the ground. Hill did not obey those commands. Eventually, Officer Smith caught up to Hill and took him to the ground. Officer Smith pinned Hill on the ground and restrained Hill's hands until Smith's partner arrived, at which point the officers attempted to place Hill into handcuffs. Hill physically resisted the officers and made several unsuccessful attempts to retrieve something from his waistband. During the struggle, a Smith & Wesson .41 caliber large frame revolver fell out of Hill's waistband onto the pavement. The revolver had a six- to seven-inch barrel and was loaded with four rounds. Neither officer was injured during this incident.

Hill was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). Hill pled guilty to the one-count indictment on June 6, 2008. Following Hill's conviction, the U.S. Probation Office prepared a

Presentence Investigation Report ("PSR"), which calculated Hill's total offense level at 21. Hill's base offense level was 14 pursuant to USSG § 2K2.1(a)(6). The PSR recommended a four-level enhancement under USSG § 2K.1(b)(6) because Hill possessed a firearm in connection with felony resisting arrest. The PSR also recommended a six-level enhancement under USSG § 3A1.2(c)(1) because Hill assaulted a law enforcement officer in a manner that created a substantial risk of serious bodily injury. Lastly, the PSR recommended a three-level reduction under USSG § 3E1.1(a) due to Hill's acceptance of responsibility.

Hill objected to the recommended enhancements in the PSR. The district court overruled Hill's objections and adopted the PSR's recommended adjustments. Hill had a category-V criminal history, placing him in a sentencing range of 70 to 87 months under the Guidelines. The district court sentenced Hill to a term of imprisonment of 78 months.

II.

Hill argues on appeal that the district court erred by applying the four-level and six-level enhancements. We review de novo the "legal conclusions a district court reaches in order to apply an enhancement for purposes of calculating an advisory guidelines range . . . while the factual findings underpinning the enhancement are reviewed for clear error." United States v. Septon, 557 F.3d 934, 936 (8th Cir. 2009).

A.

The Sentencing Guidelines provide a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." USSG Manual § 2K2.1(b)(6) (2007). "Another felony offense" is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year,

regardless of whether a criminal charge was brought, or a conviction obtained." Id. § 2K2.1 cmt. n.14(C). The PSR recommended a four-level enhancement under § 2K2.1(b)(6) because Hill committed felony resisting arrest in connection with his possession of a firearm. In support of the § 2K2.1(b)(6) enhancement, the district court found that Hill "clearly attempted to draw a firearm in an effort to use that firearm in furtherance of resisting his arrest." Hill argues that the district court erred when by concluding that he committed felony resisting arrest.

Under Missouri law, it is a class D felony to "[r]esist[] an arrest, detention or stop by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person." Mo. Rev. Stat. § 575.150(5). Hill argues that his conduct did not create a "substantial risk of serious physical injury or death" because he did not draw, point, or fire his weapon, and the officers were not injured. According to Hill, he did not commit felony resisting arrest because the risk of injury or death was too speculative. We disagree.

There is sufficient evidence in the record that Hill's actions created a substantial risk of serious physical injury or death. First, Hill attempted to retrieve his firearm from his waistband at least three times when he stopped and squared his body toward the pursuing officer.[2] Hill's conduct substantially increased the risk of serious physical injury and death to Officer Smith. See United States v. Easter, 553 F.3d 519, 524 (7th Cir. 2009) ("[S]imply reaching for a loaded gun is enough to create a substantial risk of serious bodily injury to another person."). Hill's conduct also created a "substantial risk of physical injury and death" to himself, as evidenced by the undisputed fact that Officer Smith reacted by drawing his firearm. See United States v. Lee, 199 F.3d 16, 17 (1st Cir. 1999) ("[W]hatever [the defendant's] purpose, his efforts to seize his gun did create a substantial risk of bodily injury, whether from

[2]The district court credited Officer Smith's testimony as to these facts, and we do not find any evidence to suggest that the district court's finding was clearly erroneous.

accidental discharge or the threat of fire from the police."). Indeed, the risk of harm to Officer Smith and Hill was substantial despite the fact that no one was injured. Cf. United States v. Williams, 278 F. App'x 279, 281 (4th Cir. 2008) (per curiam) (unpublished) ("Both the plain language of [USSG § 3C1.2] and case law mandate application of the adjustment when the defendant is resisting arrest and his conduct creates a substantial *risk* of serious bodily injury, even though no injury results.").

Additionally, Officer Smith testified that Hill attempted to retrieve his firearm from his waistband after Officer Smith tackled him. In United States v. Bates, 561 F.3d 754 (8th Cir. 2009), the evidence showed that the defendant, "while armed with a loaded weapon, intentionally struggled on the ground with the officer and continually reached toward his waistband during the altercation." Id. at 757. Those facts were sufficient to affirm the district court's conclusion that the defendant recklessly created a "substantial risk of death or serious bodily injury to another person." Id. at 756–57. The facts here are strikingly similar, and therefore Bates is persuasive.[3] See also Williams, 278 F. App'x at 281 ("A struggle in which all the parties are armed carries an obvious risk that the struggle might escalate to the point that a firearm is used, or discharges accidentally."); United States v. Bowie, 198 F.3d 905, 913 (D.C. Cir. 1999) (holding that defendant's attempts to reach for a loaded firearm in his waistband during a struggle with police officers created a substantial risk of serious bodily injury); United States v. Weaver, 8 F.3d 1240, 1245 (7th Cir. 1993) (holding that defendant's efforts to reach inside his jacket for a loaded firearm provided a sufficient basis for concluding that defendant created "substantial risk of serious bodily injury to the officers").

---

[3]Bates is not binding precedent because the legal issue was different. In Bates, we affirmed a two-level reckless endangerment enhancement under USSG § 3C1.2. However, Bates is persuasive because the standard for a § 3C1.2 enhancement ("If the defendant recklessly created a substantial risk of death or serious bodily injury . . .") is nearly identical to the standard for felony resisting arrest. See Mo. Rev. Stat. § 575.150.

In support of his argument, Hill cites Bell v. Kentucky, 122 S.W.3d 490 (Ky. 2004), in which the Supreme Court of Kentucky determined as a matter of law that a criminal defendant did not create a substantial risk of death or serious bodily injury when he discarded a loaded handgun during a foot chase by a police officer. Id. at 498–99. We agree with the court in Bell when it noted, "Whether a defendant's act . . . creates 'a substantial risk of death or serious physical injury' will, of course, turn on the unique circumstances of an individual case." Id. at 497. Importantly, the defendant in Bell did not turn and square off with the pursuing officer. Also, the risk of armed confrontation was much lower in Bell because the police officer never drew his weapon or believed that he was authorized to do so. Id. at 499. As such, Bell is not helpful for the "unique circumstances" of this case.

We conclude that Hill committed felony resisting arrest because Hill's attempts to retrieve his loaded firearm during the struggle with police officers created a substantial risk of serious physical injury or death to himself and the officers. Accordingly, the district court did not err in applying a four-level enhancement under USSG § 2K2.1(b)(6).

## B.

A six-level sentence enhancement applies when the defendant assaults a person they know or have reasonable cause to believe is a law enforcement officer during the course of an offense or immediate flight therefrom "in a manner creating a substantial risk of serious bodily injury." USSG Manual § 3A1.2(b). This section "applies in circumstances tantamount to aggravated assault . . . against a law enforcement officer." Id. § 3A1.2 cmt. n.4. The PSR recommended this enhancement based on Hill's unsuccessful attempts to retrieve the firearm during the foot chase and after Officer Smith tackled him—that is, the same actions that justified the § 2K2.1(b)(6) enhancement. Over Hill's objection, the district court adopted the PSR's recommendation and stated its factual findings in support:

> [T]he defendant was attempting to draw a weapon in order to discharge that weapon at the officer given the manner in which these events occurred. The defendant stopping, turning towards the officer as he attempted to draw the weapon creates a clear inference that the defendant was attempting to use that weapon against the officer and that he would have done so had he been successful in extracting that weapon from his waistband. If the defendant was merely trying to discard that weapon, the defendant would not have needed to stop to turn towards the officer in his effort to withdraw that weapon. Rather the defendant would have more likely merely attempted to draw that weapon as he ran away from the officer to throw it off so that it would not be found on him when -- if and when he was ultimately apprehended.

Upon careful review, we believe these factual determinations are not clearly erroneous. Based on these findings, we conclude that Hill's actions were assaultive in nature.

Hill's challenge to the six-level official-victim enhancement again boils down to the contention that his actions did not create a "substantial risk of serious bodily injury." Hill cites United States v. Iron Cloud, 75 F.3d 386 (8th Cir. 1996), in support of his argument. In Iron Cloud, this Court vacated a sentence based on the improper application of an official victim enhancement where a defendant resisted arrest and the police officer had to draw his firearm and use all of his strength to arrest the defendant. Id. at 390. Iron Cloud does not control the outcome in this case, however, because the defendant in Iron Cloud did not have a firearm and never even assaulted the police officers. Id. In this case, Hill's actions were assaultive, and as we explained with greater detail in the previous section, Hill's repeated attempts to retrieve a firearm from his waistband created a substantial risk of serious bodily injury to Officer Smith. See Bates, 561 F.3d at 757; Easter, 553 F.3d at 524; Williams, 278 F. App'x at 281; Bowie, 198 F.3d at 913; Weaver, 8 F.3d at 1245. Therefore, we find no error in the district court's application of a six-level enhancement under USSG § 3A1.2(b).

III.

Alternatively, Hill contends that "the district court erred in impermissibly 'double-counting' when it applied two sentence enhancements which both stemmed from the single act [of Hill] attempting to 'draw' his weapon while fleeing from the officer." We review de novo whether a district court impermissibly double counted in applying the sentencing guidelines. United States v. Hipenbecker, 115 F.3d 581, 583 (8th Cir. 1997). "Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Hedger, 354 F.3d 792, 793 (8th Cir. 2004) (citations and quotation marks omitted). Double counting may be allowed, however, where "(1) the Sentencing Commission intended the result and (2) each statutory section concerns conceptually separate notions relating to sentencing." Id. at 794 (internal quotations omitted).

In United States v. Fleming, 8 F.3d 1264 (8th Cir. 1993), without considering the double counting issue, we approved the use of enhancements under §§ 2K2.1 and 3A1.2 based upon a fleeing defendant's act of shooting at an officer while possessing a firearm. Id. at 1266–67.[4] In a more recent per curiam opinion, we relied on Fleming to reject the argument that cumulative enhancements under §§ 2K2.1 and 3A1.2 constitute impermissible double counting. United States v. Brown, 252 F. App'x 119, 120 (8th Cir. 2007) (per curiam) (unpublished); see also United States v. Fisher, 502 F.3d 293, 309 (3d Cir. 2007); United States v. Banos-Olmedo, 144 F. App'x 297, 298 (4th Cir. 2005) (per curiam) (unpublished); United States v. Coldren, 359 F.3d 1253,

---

[4]See also Bowie, 198 F.3d at 913 (approving similar enhancements without addressing a double counting objection); United States v. Campbell, 209 F. App'x 541, 543–44 (7th Cir. 2006) (unpublished) (same).

1256–57 (10th Cir. 2004); United States v. Jackson, 276 F.3d 1231, 1231 (11th Cir. 2001).  For a couple of reasons, we see no need to reconsider those decisions.

First of all, the Sentencing Commission intended the §§ 2K2.1 and 3A1.2 enhancements to be cumulative.  The Sentencing Guidelines Manual acknowledges that enhancements under Chapter Two and adjustments under Chapter Three "are to be applied cumulatively" even though they "may be triggered by the same conduct." USSG Manual § 1B1.1 cmt. n.4(B).  "For example, shooting a police officer during the commission of a robbery may warrant an injury enhancement under § 2B3.1(b)(3) and an official victim adjustment under § 3A1.2, even though the enhancement and the adjustment both are triggered by the shooting of the officer." Id.  Whereas the Sentencing Guidelines Manual explicitly declares when double counting is impermissible in other situations, see, e.g., id. § 3C1.2 cmt. n.1 (prohibiting the application of a reckless-endangerment enhancement "where the offense guideline in Chapter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct"), the Manual does not prohibit the cumulative application of USSG §§ 2K2.1(b)(6) and 3A1.2(b). Second, the §§ 2K2.1 and 3A1.2 enhancements may be applied cumulatively because they are based on distinct aspects of Hill's conduct.  See United States v. Zech, 553 F.3d 663, 668 (8th Cir. 2009) (per curiam) (approving cumulative application of two enhancements because the guidelines "address conceptually separate sentencing notions").  The § 2K2.1 enhancement addresses the connection between a felony and use of a firearm, whereas the § 3A1.2 adjustment concerns the identity of the victim of Hill's assaultive conduct. Cf. United States v. Joiner, 418 F.3d 863, 870 (8th Cir. 2005) (holding that double counting was permissible because official victim adjustment addressed a different consideration from the guideline for obstruction of justice offenses).

Accordingly, we hold that the cumulative enhancements under USSG §§ 2K2.1(b)(6) or 3A1.2(b) did not constitute impermissible double counting.

IV.

For the foregoing reasons, we affirm.

_____