# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3317

_____

United States of America

*Plaintiff - Appellee*

v.

Brannon L. Mackins

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: April 3, 2017
Filed: July 28, 2017
[Unpublished]

_____

Before WOLLMAN, LOKEN, and RILEY, Circuit Judges.

_____

PER CURIAM.

Brannon L. Mackins pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced him

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

to 108 months' imprisonment. Mackins appeals from his sentence, arguing that the evidence was insufficient to support the application of a 6-level "Official Victim" enhancement under § 3A1.2(c)(1) of the United States Sentencing Guidelines Manual (U.S.S.G. or Guidelines). We affirm.

Based on Mackins's total offense level of 21 and a criminal history category of III, his presentence report (PSR) recommended an advisory Guidelines range of 46 to 57 months' imprisonment. The government objected, arguing for imposition of a 6-level enhancement under U.S.S.G. § 3A1.2(c)(1), which applies when a defendant assaults a law enforcement officer during or in flight from the offense "in a manner creating a substantial risk of serious bodily injury."

During the sentencing hearing, the district court adopted the PSR's factual statements and then heard testimony and considered evidence regarding the § 3A1.2(c)(1) enhancement. Sergeant Joseph Hahn of the Cape Girardeau, Missouri, Police Department testified that he and other officers observed Mackins, who had outstanding warrants for his arrest, walking on a sidewalk in Cape Girardeau in December 2015. When the officers exited their patrol car to speak with Mackins, he entered private property and walked into the back yard of a residence. Hahn stated that it was "very evident" that Mackins was trying to evade the officers. More officers arrived and created a perimeter to prevent Mackins from escaping, effectively trapping him within the fenced-in back yard.

Mackins told the officers that he lived at the residence and that the officers were trespassing, but he did not know the address of the residence. He provided Hahn with a fictitious name, date of birth, and Social Security number. Hahn testified that Mackins appeared to be "immediately hostile and aggressive from our initial approach." Based on Hahn's eighteen years of law-enforcement experience, he believed that Mackins was preparing to physically confront the officers, "to fight or flee." Hahn physically placed Mackins in a seated position after Mackins refused

Hahn's command to sit down on the steps leading to the residence, whereupon Mackins almost immediately stood up again. After Hahn spoke with witnesses across the street, he returned to arrest Mackins, who was then standing in the carport.

Hahn informed Mackins that he was being arrested and grabbed Mackins's right arm to place him in handcuffs. According to Hahn, Mackins "violently threw his right hand forward to break [Hahn's] grasp on his arm." With his left hand, Mackins pushed off a nearby car, away from another officer who was trying to restrain him. Mackins then reached with his right hand for either his waistband or the front pocket of his sweatshirt. He repeatedly attempted to reach into his pocket while Hahn grabbed and held his right arm to prevent him from doing so. Hahn stated that Mackins appeared to be attempting to retrieve an object.

"After a substantial struggle," Mackins and Hahn "went to the ground." As Hahn pinned him down, Mackins attempted to push himself off the ground with his left hand while again reaching toward his pocket with his right hand. Hahn eventually succeeded in placing Mackins in handcuffs.

The officers found a loaded handgun in the pocket that Mackins had been reaching for. After Mackins yelled to the crowd of onlookers that Hahn had attempted to choke him and otherwise injure him, Hahn explained to Mackins that he had used the force required to stop Mackins from drawing the gun and "forcing a lethal situation," implying that, had Mackins drawn the gun, Hahn would have had to use deadly force. Mackins replied, "[I]f I had got to it, you wouldn't have had a chance to." "Based on [Mackins's] actions and the situation and his tone," Hahn interpreted this statement as a declaration that Mackins had intended to draw the gun and fire upon Hahn or the other officers.

During cross-examination, Hahn agreed that Mackins had made the statement described above shortly after the physical struggle with Hahn, and while complaining

of neck and shoulder pain. Mackins introduced the probable cause affidavit of Patrolman Nick Becker, which, Hahn acknowledged, did not mention Mackins's statement. Hahn also acknowledged that the report of another officer, which was not offered at the hearing, did not indicate that Mackins made this statement. Hahn testified that while the officers began to approach Mackins in the back yard, Mackins's hands were free and he made no attempt to reach into his pockets or draw a firearm. Hahn also testified that when he physically forced Mackins into a seated position, Mackins's hands were free and he did not reach for his pockets. Hahn agreed that Mackins began reaching for his pockets only after Hahn placed him under arrest and attempted to secure him in handcuffs. Although Hahn did not see the gun until after he placed Mackins in handcuffs, Hahn testified that even before that time he had "believed very strongly based upon a high number of indicators" that Mackins had a weapon and had attempted to draw it.

The district court found by a preponderance of the evidence that the 6-level § 3A1.2(c)(1) enhancement was appropriate because "there was assaultive conduct on the part of the Defendant against the arresting officer that was sufficiently serious to create at least a substantial risk of serious bodily injury." The court stated:

> It's the Court's impression that the Defendant was trying to obtain a weapon, that it's very fortunate that there was not a shooting and that, in effect, the Defendant actually admitted that had he been able to retrieve that gun from his pocket that there would have been a shooting.

Based on a total offense level of 27 and a criminal history category of III, the court calculated an advisory Guidelines range of 87 to 108 months' imprisonment and then sentenced Mackins to 108 months' imprisonment.

"This court reviews the district court's construction and application of the sentencing guidelines de novo, and we review its factual findings regarding enhancements for clear error." United States v. Olson, 646 F.3d 569, 572 (8th Cir.

-4-

2011) (quoting United States v. Bastian, 603 F.3d 460, 465 (8th Cir. 2010)). "The government must prove the facts needed to support a sentencing enhancement by a preponderance of the evidence." Id. (quoting United States v. Hansel, 524 F.3d 841, 847 (8th Cir. 2008)).

We perceive no error in the district court's conclusion that the factual findings set forth above were sufficient to support the § 3A1.2(c)(1) enhancement. The district court found that Mackins attempted to draw a weapon while resisting arrest and struggling with Hahn, and that Mackins later admitted that he had intended to use the gun against the arresting officers. Such an attempt constituted an assault upon the arresting officers that created a substantial risk of serious bodily injury. See United States v. Hill, 583 F.3d 1075, 1077, 1079-80 (8th Cir. 2009) (upholding a § 3A1.2(c)(1) enhancement where the defendant repeatedly stopped fleeing, turned toward pursuing police officers, and attempted to draw a gun, and later attempted to draw the gun while physically resisting arrest); see also Olson, 646 F.3d at 574 (upholding a § 3A1.2(c)(1) enhancement where the defendant refused officers' commands to drop the gun he was holding and raised it as if to fire at the officers).

The district court's factual findings were not clearly erroneous. To the extent that Mackins disputes the court's finding that he actually made the statement regarding using the gun against the arresting officers, that finding depends on the district court's assessment of Hahn's credibility, which is "quintessentially a judgment call and virtually unassailable on appeal." United States v. Sicaros-Quintero, 557 F.3d 579, 582 (8th Cir. 2009) (quoting United States v. Hart, 544 F.3d 911, 916 (8th Cir. 2008)). Mackins argues that the statement might have been delivered in a sarcastic tone, and thus not an admission that he had intended to use the gun against the officers but rather an "attempt through bombast to be insulting and arrogant upon being informed by Hahn that Mackins just came very close to being killed." Appellant's Br. 17. Whatever the plausibility of such an interpretation of Mackins's statement, the district court did not clearly err in rejecting it. Given

Hahn's firsthand observations of Mackins's tone and behavior during the encounter, the court did not clearly err in crediting Hahn's testimony that the statement conveyed Mackins's intent to use the gun against the officers, had he been able to draw it. Likewise also with respect to Mackins's arguments that he reached for his pockets only to prevent Hahn from placing him in handcuffs and that if he had intended to draw the gun and use it against the officers, he would have done so before he was physically restrained. The district court did not clearly err in concluding, based on Hahn's testimony, that Mackins attempted to draw the gun after Hahn informed him he was being placed under arrest.

The judgment is affirmed.

_____