# United States Court of Appeals
## For the Eighth Circuit
_____

No. 20-2688
_____

United States of America

*Plaintiff - Appellee*

v.

Jamie Nicol Nilsen

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: September 21, 2021
Filed: November 19, 2021
_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Jamie Nicol Nilsen pled guilty to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1] applied a four-level enhancement for possessing a firearm in connection with

_____

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

another felony offense under U.S.S.G. § 2K2.1(b)(6)(B). It sentenced him to 63 months in prison and three years of supervised release. He appeals the four-level enhancement. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In August 2019, Bismarck Police Officer Damian Girodat saw a jail video call showing Nilsen, a convicted felon, with a handgun. On August 6, Nilsen was driving near the Bismarck Police Department headquarters. Officer Girodat observed him failing to use a proper turn signal when parking. Knowing Nilsen recently possessed a gun, Officer Girodat initiated a "modified felony stop" for safety. As Nilsen exited his car, Officer Girodat noticed a bulge, which he suspected was a gun, near Nilsen's waistband. Officer Girodat commanded him to put his hands in the air, walk backwards toward the police car, and get on his knees. Nilsen complied. Meanwhile, Bismarck Police Officer Michael Miller arrived. At one point, Nilsen lowered his arm to his waistband but then returned his empty hand to the raised position.

Officer Girodat handcuffed Nilsen but informed him that he was not under arrest. He stood Nilsen up, again looking at his waistband. He saw nothing. He asked if Nilsen had a gun. He said he did not. In response, Office Miller called Nilsen a "fucking bitch." Nilsen lunged at Officer Miller. There was a short struggle. Officer Girodat again asked Nilsen if he had a gun. Nilsen responded, "stop talking shit." Officer Miller told Officer Girodat to put Nilsen on the ground. There was another struggle. Officer Girodat again asked Nilsen if he had a gun. Nilsen became angry. There was yet another struggle. The gun fell from Nilsen's pants to the ground. Another officer arrived and retrieved the gun. Nilsen continued to resist arrest. It took three officers to control him. The officers took Nilsen into custody. At some point, Nilsen suggested he wished he had used the gun because there was "no difference between a murder and a 25."

II.

Nilsen argues the district court erred in applying the enhancement under U.S.S.G. § 2K2.1(b)(6)(B). This court reviews factual findings supporting an enhancement for clear error, and legal conclusions about the guidelines de novo. *United States v. Gibson*, 840 F.3d 512, 514 (8th Cir. 2016). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Schaub v. VonWald*, 638 F.3d 905, 923 (8th Cir. 2011) (internal quotation marks omitted).

A four-level enhancement to the base offense level is warranted if a defendant "used or possessed any firearm or ammunition in connection with another felony offense." **U.S.S.G. § 2K2.1(b)(6)**. "In connection with means that, at a minimum, the firearm had a purpose or effect with respect to the other felony offense because its presence facilitated or had the potential to facilitate the offense, as opposed to being the result of mere accident or coincidence." *United States v. Smith*, 535 F.3d 883, 885 (8th Cir. 2008) (internal quotation marks omitted), *citing* **U.S.S.G. § 2K2.1(b)(6) cmt. n.14(A)**.

The district court found that the government established by a preponderance of the evidence that Nilsen possessed a firearm in connection with the North Dakota felony offense of preventing arrest. *See* **N.D.C.C. § 12.1-08-02(1)**. Nilsen believes this finding was erroneous. First, he argues the district court erred in determining he possessed the gun in connection with another felony offense. Second, he asserts the gun did not have the potential to facilitate the felony because he was handcuffed with no access when arrested.

A.

A person is guilty of the felony offense of preventing arrest under § 12.1-08-02(1) if "with intent to prevent a public servant from effecting an arrest of himself

or another" for a felony offense, "he creates a substantial risk of bodily injury to the public servant." **N.D.C.C. § 12.1-08-02(1)**.

Nilsen argues he did not possess the gun in connection with the felony-offense of preventing arrest because, to the extent he committed felony-level preventing arrest, he did so only "after he no longer possessed the gun." The felony at issue is North Dakota's felon-in-possession of a firearm statute. **N.D.C.C. § 62.1-02-01**. Nilsen asserts the officers lacked probable cause to arrest him as a felon-in-possession until *after* they found the gun on the ground. He reasons that he did not possess the gun in connection with the felony-offense of preventing arrest because the gun was on the ground when the arrest began.

Nilsen's argument is undermined by the plain language of the statute. As the district court noted, the "plain and unambiguous language" of the statute does not require, as Nilsen suggests, that the officers "be in the process of or attempting to arrest" the defendant. Rather, it requires only an intent to prevent an arrest. Before an arrest, a defendant can develop the intent to prevent an arrest. *See **United States v. Williams***, 278 Fed. Appx. 279, 280 (4th Cir. 2008) ("Although Williams was not technically resisting arrest when he struggled with the officers, he was anticipating the arrest that he knew would occur if he were found to be carrying a gun together with eleven grams of crack and $1003 in cash."). The key then is when Nilsen developed the intent to prevent the officers from effecting his arrest. If, at some point during the stop while Nilsen possessed the gun, he had the intent to prevent his arrest, the district court did not clearly err in finding he met the elements of the statute.

The district court concluded that Nilsen's intent to prevent an arrest began before he lost control of the firearm:

> Even assuming the Defendant was not technically under arrest at the time he began to struggle with the Officers after being asked the third time about the firearm, the preponderance of the evidence shows he intended to prevent the Officers from arresting him for illegally

possessing the firearm. The Defendant had a gun on his person from the moment Officer Girodat began the traffic stop. It is clear from the video there is a bulge directly where Officer Girodat testified he saw a bulge. Once he backed up with his hands in the air, at one point he lowers one hand to the area Officer Girodat saw the firearm, presumably to push it further down his pants. After Officer Girodat asked the Defendant a third time about the firearm (this time if the firearm was in his waistband), it became immediately clear the Defendant's resistance switched from being angry with Officer Miller's inappropriate comment to trying to prevent them from discovering the firearm and therefore arrest him for being a felon in possession of a firearm. The Defendant's anger and frustration turned to rage and the struggle with the officers intensified. Furthermore, the Defendant knew he was prohibited from possessing a firearm as evidenced by the fact that he was aware to some degree of punishment related to being a felon in possession of a firearm, even if erroneous. From this, the Court concludes it was the Defendant's intent to prevent the Officers from arresting him for being a felon in possession of a firearm, a Class C Felony, in violation of N.D.C.C. § 62.1-02-01(1).

Nilsen argues, based on *State v. DuPaul*, 509 N.W.2d 266 (N.D. 1993), that he "merely prevented" officers "from discharging an official duty—the investigatory stop," which is a misdemeanor, not a felony. But *DuPaul* is inapplicable. There, the court addressed only the misdemeanor provision of N.D.C.C. § 12.1-08-02(1), not the felony provision. *See DuPaul*, 509 N.W. at 269 ("The complaint in this case charged DuPaul with the intent to prevent the officer from discharging his official duties."). In the misdemeanor provision, it noted a distinction between: (1) intent to prevent arrest and (2) intent to prevent the discharge of an official duty. *Id*. It then discussed the latter provision, noting that intent to prevent the discharge of an official duty did not require the defendant be "under arrest." *Id*. Neither the issue of what constitutes "an arrest" under the misdemeanor provision nor the issue of what constitutes "an arrest" under the felony provision was before the *DuPaul* court.

The district court did not clearly err in determining that Nilsen, who was handcuffed by police and knew he unlawfully possessed a gun as a convicted felon, had the intent to prevent an arrest. *See Williams*, 278 Fed. Appx. at 280-81

(upholding application of a guideline requiring a defendant resist arrest even though the defendant was "not technically resisting arrest when he struggled with the officers").

The district court also determined the gun created a substantial risk of bodily injury to the officers:

> The Defendant's conduct here plainly created a substantial risk of causing bodily injury to the Officers. The Defendant had a loaded firearm with one round in the magazine somewhere in his pants. He then chose to engage in a struggle with law enforcement in order to prevent them from discovering the firearm. Due to the nature of the firearm being loaded and the ensuing struggle, the Court finds the Defendant acted "in conscious and clearly unjustifiable disregard of the substantial risk" of injury or even death to an Officer under these circumstances. See N.D.C.C. § 12.1-02-02(1)(c). This behavior had no justification and "grossly deviated from [the] acceptable standards" of conduct when a citizen encounters a law enforcement officer. Id. As such, there is a preponderance of the evidence that the Defendant created a substantial likelihood of bodily injury to the Officers involved in this case. See United States v. Hill, 583 F.3d 1075, 1079 (8th Cir. 2009) (citing United States v. Williams, 278 Fed. Appx. 279, 281 (4th Cir. 2008) ("A struggle in which all the parties are armed carries an obvious risk that the struggle might escalate to the point that a firearm is used or discharges accidentally.")).

The district court did not clearly err in this finding.

## B.

Nilsen also asserts U.S.S.G. § 2K2.1(b)(6) does not apply because the "gun did not facilitate nor did it have the potential to facilitate preventing arrest." He mostly relies on the fact he was handcuffed, with no access to the gun, and he did not reach for it.

-6-

The district court found otherwise. It said:

> When the Defendant committed the offense, the firearm was unsecured somewhere in his pants. The exact location is immaterial because the presence of the gun somewhere on the Defendant's person during the course of an intense struggle with law enforcement posed a substantial risk of bodily injury due to the fact that it could have discharged accidentally. See Hill, 583 F.3d at 1079 (citing Williams, 278 Fed. Appx. at 281 (4th Cir. 2008)). This is especially true given the fact that the firearm had six rounds in the magazine and one round chambered. The presence of the firearm was not merely accidental or coincidental but was in fact integral to the Defendant committing the felonious conduct at issue here. Without the presence of the firearm, the Defendant could not have engaged in the felony-level Preventing Arrest conduct. In other words, the Defendant engaged in the felony-level offensive conduct precisely because the firearm had a round chambered and was somewhere in his pants during the struggle with law enforcement. This conduct alone posed a substantial risk of misfire and potential injury to the Officers. As such, there is a preponderance of the evidence that the Defendant possessed the firearm "in connection with" the felony-level Preventing Arrest conduct.

The district court did not clearly err in making this finding. *See **United States v. Guiheen***, 594 F.3d 589, 591 (8th Cir. 2010) (holding that "access" to a hidden rifle "emboldened" the defendant to commit another offense); ***United States v. Mack***, 343 F.3d 929, 936 (8th Cir. 2003) ("[A] defendant's maintenance of a firearm at an easily accessible location while in a stolen car permits the inference that the firearm emboldened the defendant to continue his illegal conduct.").

The district court did not err in applying the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

\* \* \* \* \* \* \*

The judgment is affirmed.

_____