# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-1310
_____

United States of America

*Plaintiff - Appellee*

v.

Jeffrey Alan Bradley

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: April 13, 2026
Filed: May 14, 2026
[Unpublished]
_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.
_____

PER CURIAM.

Jeffrey Alan Bradley pled guilty to receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). The district court[1] sentenced him

_____

[1]The Honorable C.J. Williams, Chief Judge, United States District Court for the Northern District of Iowa.

to 120 months in prison. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Bradley challenges the court's application of a 2-level sentencing enhancement for resisting arrest. This court reviews "the district court's findings of fact for clear error." *United States v. Burling*, 420 F.3d 745, 749 (8th Cir. 2005). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Nilsen*, 18 F.4th 587, 589 (8th Cir. 2021).

At the sentencing hearing, officers testified that before his arrest, Bradley's wife told them that he was left-handed and would be carrying a firearm on his left side. Officers followed Bradley to a grocery store. Approaching him, one said, "Police. Put your arms behind your back." Two officers attempted to handcuff him. He "began to resist us by pulling away, by fighting with us." Several more officers joined. They handcuffed his right hand but were "unable to gain control of his left hand." "He was still fighting, twisting, trying to pull his arm away from us as we were trying to get him in custody." He kept reaching for his left pocket. It took officers about a minute to get him handcuffed. They then saw the loaded firearm. One officer said, "Yep, got a pistol right here. Nice try reaching for it." Another explained the arrest to his sergeant: "The defendant reached for the gun, he had a little dagger, and he fought the whole way." They also found extra ammunition, two knives, and a suicide note on Bradley.

Bradley argues the officers misinterpreted his struggle with law enforcement based on a confirmation bias stemming from his wife's comment that he was carrying. He also claims he did not know it was law enforcement grabbing him. Finally, he contends he was pulling his arm forward, but not toward the gun in his pocket.

The district court rejected these arguments, finding Bradley resisted arrest:

Part of the offense conduct also involves the defendant's resistance of arrest. And I do find that to be highly aggravating here. First of all, I—I observed the video myself, without any knowledge that law enforcement officers had going into this the defendant was already armed. From watching the defendant's resistance and the discovery of a firearm on his—in his left pocket, I drew a logical conclusion that the defendant was resisting arrest and attempting to reach for his firearm.

So unlike the law enforcement officers, who may have entered into the interaction with the defendant already knowing that he had a gun in his left pocket because of their advanced intelligence and may have drawn conclusions from that, I didn't have that advanced information when I first looked at the videotape. And I drew the conclusion, which I think is the logical conclusion, that the defendant was resisting because he was attempting to go for his gun.

That is also consistent with the suicide notes. I get that the suicide notes are predated, but the fact the defendant still had them with him all suggests that the defendant recognized his predicament. And that also is circumstantial evidence that leads me to believe the defendant was going for his gun either to kill himself or to commit suicide by cop or to resist, using his weapon against the officers.

. . . .

And the bottom line is, as Mr. Nathan said, he has no reason to disbelieve the officer's testimony under oath that the defendant was told—I'm sorry. Let me back up. Mr. Nathan said he has no reason to believe that the officer is lying. Well, if he's not lying under oath about anything else, he's also not lying under oath when he indicates that the uniformed officer announced that it was the police and the defendant was being placed under arrest.

Plus, it just simply makes sense. It is in the officer's interests to alert the offender that it is the police, and he is being placed under arrest in order to obtain compliance from him. It's routinely done. There would be no reason whatsoever for the officers to simply assault the

defendant under these circumstances and not announce that it is an officer placing the defendant under arrest. It makes absolutely no sense.

And it's also very clear from the video that the officer was front and center, seen by the defendant. The defendant saw him in uniform, knew it was the police, and knew that one officer was placing him under arrest. And the defendant chose to resist a law enforcement officer.

And given the location of the gun and given the description of the defendant's resistance, I find that the defendant was indeed attempting to reach for his firearm.

I don't buy that the uniformed officer was simply repeating what the officer who testified here today said earlier. That officer was right on top of the defendant. He was observing what the defendant was doing at the same time the officer who testified today was observing what the defendant was doing. He made his own observations and made a statement to his other officers about what he observed. There's no reason for me to simply assume that that officer simply parroted what Officer Arnold testified to today.

And so, again, we have two officers who each independently indicated that the defendant was reaching for his gun. He was resisting with his left arm, not his right arm. The firearm was on his left side. As far as the pouch, that pouch could have held a gun. It could have been a holster. But it also could have been a pouch that held the ammunition or the knives, and that's why law enforcement photographed it. I don't know, and I don't care. I don't see the relevance of whether there was a holster or not. The defendant was reaching for his gun, whether it was located in a holster in his pocket or whether it was simply sitting in his pocket openly.

I find that to be highly aggravating. It placed the community at risk. It placed the officers at risk. And it is, as the government suggested, very close to what the guidelines would classify as reckless endangerment during flight. And so I am going to vary upward based on that aggravating conduct during the arrest back to the original guideline range of 97 to 120 months because I find that conduct to be highly aggravating.

-4-

The district court did not clearly err in finding that Bradley tried reaching for his firearm and resisting arrest.

## II.

Bradley challenges the substantive reasonableness of his sentence. This court reviews "under a deferential abuse-of-discretion standard." *United States v. Garcia*, 946 F.3d 413, 419 (8th Cir. 2019). Sentences within the guideline range are presumed substantively reasonable. *Id.* "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc).

The district court expressly considered the § 3553(a) factors. It varied downward based on a policy disagreement with the enhancement under U.S.S.G. § 2G2.2(b)(6) (resulting in a guidelines range of 78 to 97 months). It then varied upward because the guidelines did not capture the seriousness of the material (resulting in the original guidelines range of 97 to 120 months). Bradley should have received a four-level enhancement if the material was sadistic/masochistic or involved an infant/toddler. Here, the material was both, but he only received one four-level enhancement. The court noted that the images were "at the extreme of what's disgusting child pornography." But it also highlighted Bradley's military service, work history, and lack of criminal history. "Simply because the district court weighed relevant factors . . . more heavily than [the defendant] would prefer does not mean the district court abused its discretion." *United States v. Farmer*, 647 F.3d 1175, 1179 (8th Cir. 2011).

The court did not abuse its discretion in sentencing.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

-5-